**No. 2017-_____**

# United States Court of Appeals
# for the Federal Circuit

IN RE:  NINTENDO OF AMERICA INC.

*Petitioner*.

Pending Petition for Writ of Mandamus to the
United States District Court for the Northern District of Texas
No. 3:13-cv-04987
Chief Judge Barbara Lynn

## EMERGENCY MOTION FOR STAY UNDER RULE 8

STEPHEN R. SMITH
ROSE S. WHELAN
JAMES P. HUGHES
COOLEY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile:  (202) 842-7899
stephen.smith@cooley.com
rwhelan@cooley.com
jhughes@cooley.com

MATTHEW J. BRIGHAM
DENA CHEN
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile:  (650) 849-7400
mbrigham@cooley.com
dchen@cooley.com

*Counsel for Petitioner Nintendo of America Inc.*

July 10, 2017

# CERTIFICATE OF INTEREST

Counsel for Petitioner hereby certifies the following:

**1.     The full name of every party represented by me is:**

Nintendo of America Inc.

**2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

N/A

**3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or _amicus_ represented by me are:**

Nintendo Co., Ltd., whose stock is publicly traded in Japan, owns 100% of Nintendo of America Inc.

**4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:**

COOLEY LLP – Stephen R. Smith, Matthew J. Brigham, Rose S. Whelan, Stephen P. McBride, James P. Hughes, Lisa Schwier, Dena Chen and Laura J. Cunningham (formerly of Cooley)

CUNNINGHAM SWAIM, LLP – Thomas C. Wright and Alex J. Whitman

SIEBMAN, BURG, PHILLIPS & SMITH, LLP – Clyde M. Siebman

Dated: July 10, 2017                         Respectfully submitted,

                                                    _/s/ Stephen R. Smith_____
                                                    Stephen R. Smith

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................... i

STATEMENT UNDER FEDERAL CIRCUIT RULE 8(D) ................................... 1

STATEMENT OF OPPOSITION (FEDERAL CIRCUIT RULE 27(A)(5)) .......... 1

STATEMENT OF RELIEF SOUGHT ................................................... 2

GROUNDS FOR STAYING THE CASE BELOW ............................... 2

LEGAL ARGUMENT ....................................................................... 4

    I.    Petitioner Is Likely to Succeed on the Merits of Its Mandamus Petition ......................................................................... 5

    II.   Petitioner Will Suffer Substantial Harm Absent a Stay ..................... 8

    III.  Issuance of the Stay Will Not Substantially Harm iLife .................... 9

    IV.  Public Interest Lies in Granting a Stay ........................................... 10

CONCLUSION ................................................................................. 11

EXHIBITS

1. Transcript of the May 11, 2017 Telephone Conference Hearing

2. Transcript of the June 23, 2017 Hearing on Motion to Dismiss

3. Memorandum Opinion and Order filed June 27, 2017

4. iLife's Response to Motion to Dismiss or Transfer for Improper Venue under 28 U.S.C. § 1406(a)

5. Declaration of Richard Medway in Support of Motion to Transfer

6. Defendant Nintendo of America Inc.'s Notice Regarding Scheduling Order

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amax, Inc. v. ACCO Brands Corp.*,
No. 16-10695-NMG, 2017 WL 2818986 (D. Mass. June 29, 2017).... 3, 11

*Cheney v. U.S. Dist. Court for Dist. of Columbia*,
542 U.S. 367 (2004) .................................................................................. 6

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
Case No. 2:15-CV-00021-HCM-LRL, 2017 WL 2556679 (E.D.
Va. June 7, 2017) .................................................................................. 10

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
No. 2:15-CV-00021-HCM-LRL, 2017 WL 2556679 (E.D. Va.
June 7, 2017) .......................................................................................... 3

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum*,
834 F.2d 277 (Fed. Cir. 1987) .............................................................. 5

*Elbit Systems Land v. Hughes Network Systems, LLC*,
No. 2:15-CV-00037, 2017 WL 2651618 (E.D. Tex. June 20, 2017) ... 3, 10

*Fourco Glass Co. v. Transmirra Products Corp.*,
353 U.S. 222 (1957) .............................................................................. 3

*Fusilamp, LLC v. Littelfuse, Inc.*,
10-20528-CIV-ALTONAGA, 2017 WL 2671997 (S.D. Fl. June
12, 2017) .......................................................................................... 3, 10

*Harper v. Virginia Dept. of Taxation*,
509 U.S. 86 (1993) ............................................................................ 3, 7

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .............................................................................. 5

*Hoffman v. Blaski*,
363 U.S. 335 (1960) .......................................................................... 9, 10

*Hoover Grp., Inc. v. Custom Metalcraft, Inc.*,
84 F.3d 1408 (Fed. Cir. 1996) ............................................................. 8

# TABLE OF AUTHORITIES
## (continued)

Page

*In re BP Lubricants USA Inc.*,
    637 F.3d 1307 (Fed. Cir. 2011) ............................................... 10

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) ................................................ 7

*In re Lloyd's Register N.A., Inc.*,
    780 F.3d 283 (Fed. Cir. 2015) .................................................. 9

*In re Sea Ray Boats, Inc.*,
    2017 WL 2577399 ................................................................... 11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................... 6, 9

*Infogation Corp. v. HTC Corp.*,
    No. 16-CV-01902-H-JLB, 2017 WL 2869717 (S.D. Cal. July 5,
    2017) ..................................................................................... 3

*Jacobson v. Lee*,
    1 F.3d 1251 (Fed. Cir. 1993) ................................................... 5

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979) ................................................................. 6

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998) ............................................................... 6, 8

*Med. Designs, Inc. v. Orthopedic Tech., Inc.*,
    684 F. Supp. 445 (N.D. Tex. 1988) ......................................... 8

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................. 4

*Olberding v. Illinois Central R. Co.*,
    346 U.S. 338 (1953) ................................................................. 8

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964) ............................................................... 10

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Scripps-Howard Radio, Inc. v. FCC*,
   316 U.S. 4 (1942) .......................................................................... 4

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   897 F.2d 511 (Fed. Cir. 1990) ..................................................... 5

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   581 U.S. ____, 137 S. Ct. 1514 (May 22, 2017) ................................ 2, 6, 7

*The Chamberlain Grp., Inc. v. Techtronic Indus. Co., Ltd.*,
   Case No. 16-C-6097, Dkt. 407 (N.D. Ill. June 28, 2017) ..................... 3, 10

*Tinnus Enters., LLC v. Telebrands Corp.*,
   No. 6:15-CV-551-RC, Dkt. 316 (E.D. Tex. July 5, 2017) ......................... 3

*Westech Aerosol Corp. v. 3M Co.*,
   C17-5067-RBL, 2017 WL 2671297 (W.D. Wash. June 21, 2017) ...... 3, 10

## STATUTES

28 U.S.C. § 1391(c) ........................................................................ 3

28 U.S.C. § 1400(b) ................................................................... 2, 7

## STATEMENT UNDER FEDERAL CIRCUIT RULE 8(D)

Petitioner Nintendo of America Inc. ("Petitioner" or "NOA") has not filed a Motion to Stay in the District Court for the Northern District of Texas. Trial in this case is scheduled to begin on August 21, 2017. The trial Judge previously refused to move the trial date to October and has expressed her intent to hold the parties to the August 21st trial date. *See* Ex. 1 (Case No. 3:13-CV-4987, 05/11/2017 Tr. of Telephone Conference Hearing) at 4:1-2 ("I am not inclined to reset the trial"); Ex. 2 (*id.*, 06/23/2017 Tr. of Motions Hearing, Dkt. 236) at 44:17-45:8 ("[THE COURT:] I am assuming that you would seek mandamus as well form the Court's decision. MR. SMITH: Yes, Your Honor…. [THE COURT:] I want you to have the opportunity to go up as quickly as possible. Meanwhile, though, I'm going to march us along to trial."). As a stay pending resolution of Petitioner's Petition for Writ of Mandamus (the "Petition") would necessarily require the trial date to be moved, it is not practicable to seek such a stay in the District Court.

## STATEMENT OF OPPOSITION
## (FEDERAL CIRCUIT RULE 27(A)(5))

Counsel for the parties conferred with respect to this motion on July 6, 2017. Respondent iLife Technologies, Inc. ("iLife") opposes this Emergency Motion to Stay and intends to file a Response. iLife further opposes the request for expedited briefing on this motion.

1

## STATEMENT OF RELIEF SOUGHT

Petitioner seeks a stay of the case below pending resolution of its Petition for Writ of Mandamus ordering the District Court to dismiss or transfer this case to the Western District of Washington.

Petitioner further seeks expedited review of this Motion to Stay. Petitioner requests that the Court order the following briefing schedule:

- iLife's Response – due July 17, 2017

- Petitioner's Reply – due July 20, 2017.

## GROUNDS FOR STAYING THE CASE BELOW

This case is set for trial on Monday, August 21, 2017, in a venue that is improper under 28 U.S.C. § 1400(b) as interpreted in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. ____, 137 S. Ct. 1514 (May 22, 2017). Ex. 3 (Dkt. 245) at 2. Pretrial proceedings begin on August 14th. *Id.* Petitioner has filed its Petition asking that this Court order the District Court for the Northern District of Texas (the "District Court") to dismiss or transfer this case to the Western District of Washington. Without a stay, Petitioner expects that this case will proceed to trial before the Petition is resolved and Petitioner's substantive right to trial in a proper venue will be violated.

This case presents an opportunity for the Court to address an issue that is currently dividing the District Courts—whether *TC Heartland* changed the law of

patent venue. Several courts have addressed this issue and erroneously concluded that the Federal Circuit overstepped its authority when it interpreted the 1988 amendments to 28 U.S.C. § 1391(c) as superseding the Supreme Court's decision in *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957).[1]  In reaching this conclusion, these courts ignore the Supreme Court's mandate that "a decision 'extending the benefit of the judgment' to the winning party 'is to be applied to other litigants whose cases were not final at the time of the first decision.'"  *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 96 (1993).  In contrast, at least two courts have recognized that *TC Heartland* applies to litigants in currently pending cases.[2]

---

[1] *See Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-CV-00021-HCM-LRL, 2017 WL 2556679 (E.D. Va. June 7, 2017) (*TC Heartland* is not a change-of-law); *Elbit Systems Land v. Hughes Network Systems, LLC*, No. 2:15-CV-00037, 2017 WL 2651618, at *18 (E.D. Tex. June 20, 2017) (same); *The Chamberlain Grp., Inc. v. Techtronic Indus. Co., Ltd.*, Case No. 16-C-6097, Dkt. 407 (N.D. Ill. June 28, 2017) (same); *Amax, Inc. v. ACCO Brands Corp.*, No. 16-10695-NMG, 2017 WL 2818986 (D. Mass. June 29, 2017) (same); *Infogation Corp. v. HTC Corp.*, No. 16-CV-01902-H-JLB, 2017 WL 2869717 (S.D. Cal. July 5, 2017) (same); *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-CV-551-RC, Dkt. 316 (E.D. Tex. July 5, 2017) (same).

[2] *Fusilamp, LLC v. Littelfuse, Inc.*, 10-20528-CIV-ALTONAGA, 2017 WL 2671997 (S.D. Fl. June 12, 2017) (recognizing the retroactive application of *TC Heartland* under *Harper*, but denying motion to dismiss because case is stayed and "not a currently pending case"); *Westech Aerosol Corp. v. 3M Co.*, C17-5067-RBL, 2017 WL 2671297 (W.D. Wash. June 21, 2017) ("In particular, the [Supreme] Court [in *TC Heartland*] overruled decades-old Federal Circuit jurisprudence and held that a domestic corporate defendant 'resides' only in the state in which it is incorporated.").

3

This case is a proper vehicle for addressing this issue because there is no dispute that venue in the Northern District of Texas is improper and the only issue is whether Petitioner can raise the improper venue defense afforded to it by the *TC Heartland* decision. But this opportunity will be lost if the case below is not stayed and the parties are forced to go to trial in an improper venue before the Petition is resolved.

Given the fast approaching date of trial, Petitioner seeks expedited briefing on this motion. Absent expedited briefing, this Court may not address Petitioner's request for a stay prior to the commencement of pre-trial proceedings on August 14th and both the parties and the District Court will waste resources preparing for a trial in the Northern District of Texas if the Petition is subsequently granted.

## LEGAL ARGUMENT

This Court is authorized to enter a stay of lower court proceedings pending appeal pursuant to Federal Rule of Appellate Procedure 8. The Court's power to stay is inherent and a "part of its traditional equipment for the administration of justice." *Nken v. Holder*, 556 U.S. 418, 421, 426 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9 (1942)).

The Court must apply "the four factors that always guide [its] discretion to issue a stay pending appeal:  '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The Supreme Court has recognized that "the[se] traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton*, 481 U.S. at 777. "[T]he four stay factors can effectively merge, as our court impliedly recognized in *DuPont*, saying, 'in considering whether to grant a stay pending appeal, this court assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public.'" *Standard Havens Prods.*, 897 F.2d at 513 (quoting *E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 834 F.2d 277, 278 (Fed. Cir. 1987)). Accordingly, "[t]he stronger the showing of likelihood of success on the merits, the less heavily the balance of harms need tip in movant's favor." *Jacobson v. Lee*, 1 F.3d 1251 (Fed. Cir. 1993).

## I.    Petitioner Is Likely to Succeed on the Merits of Its Mandamus Petition.

A Petitioner has a strong likelihood of success on the merits when: (1) it has "no other adequate means to attain the relief [it] desires," (2) its "right to issuance of the writ is clear and indisputable," and (3) the issuing court is "satisfied that the

writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004). These factors are met here.

*First*, Petitioner has no other means by which it can prevent participating in a trial in an improper venue, which is a violation of Petitioner's substantial right to a convenient and proper venue. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 42-43 (1998) ("[T]he strict limitation on venue … is sufficient to establish the substantial character of any violation."); *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."). Resolution of this issue on appeal will neither prevent nor remedy the harm suffered by Petitioner. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008). ("[T]he harm— inconvenience to witnesses, parties and other—will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle.")

*Second*, Petitioner's "right to issuance of the writ is clear and indisputable" because the District Court clearly erred in refusing to apply *TC Heartland* to this case. As explained in the Petition, the District Court erroneously: (1) concluded the Federal Circuit does not have the authority to determine whether Congressional amendments to a statute have superseded Supreme Court decisions; (2) failed to

6

apply *TC Heartland* retroactively as required by *Harper*, 509 U.S. 86; and (3) held Petitioner waived its improper venue defense, ignoring the principles of retroactivity and an intervening change in law.  Ex. 3 (Dkt. 245) at 10-11.  These actions are an abuse of the District Court's discretion.  *In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012) ("A district court abuses its discretion if it relies on an erroneous conclusion of law.") (citation omitted).

    *Third*, this case represents an extraordinary circumstance in which a District Court refuses to acknowledge the power of the Federal Circuit to interpret statutory amendments.   In doing so, the District Court avoids the proper retroactive application of the Supreme Court's decision in *TC Heartland*.   In such circumstances, this Court should be satisfied that a writ of mandamus is appropriate.

    Under *TC Heartland*, venue in the Northern District of Texas is improper. Moreover, iLife does not contest that venue in the Northern District of Texas is improper under the Supreme Court's application of Section 1400(b) in *TC Heartland*.  *See* Ex. 4 (Dkt. 228) (raising issues of waiver and no change of law, but not contesting that venue is improper).  To establish venue, iLife must show that Petitioner either "resides" in the Northern District of Texas or that it "has committed acts of infringement and has a regular and established place of business" in that district.  *See* 28 U.S.C. § 1400(b); *see also Hoover Grp., Inc. v.*

7

*Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("Venue is based on the facts alleged in the well-pleaded complaint."); *Med. Designs, Inc. v. Orthopedic Tech., Inc.*, 684 F. Supp. 445, 446 (N.D. Tex. 1988) ("the plaintiff bears the burden of proving both acts of infringement and a regular place of business in order to establish proper venue."). Petitioner, however, is incorporated in the State of Washington and has no regular and established place of business in Texas. Ex. 5 (Decl. of Richard Medway, Dkt. 11-2) ¶¶ 3, 9. Accordingly, venue is improper in the Northern District of Texas.

## II.    Petitioner Will Suffer Substantial Harm Absent a Stay

Absent a stay in the case below, Petitioner will be forced to proceed to trial on August 21, even if its Petition for Writ of Mandamus is still pending. Trial in a district with improper venue violates a substantial right of the defendant. *See Lexecon Inc.*, 523 U.S. at 42-43 ("[T]he strict limitation on venue … is sufficient to establish the substantial character of any violation."); *Olberding v. Illinois Central R. Co.*, 346 U.S. 338, 340 (1953) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction.") (reversing judgment in an improper venue and remanding for trial in a proper venue).

Moreover, both the Federal Circuit and the Fifth Circuit have recognized that if a case goes to trial in an improper venue, "the very harm sought to be

avoided by transferring venue—'inconvenience to witnesses, parties and other'—will have worked irreversible damage and prejudice by the time of final judgment." *In re Lloyd's Register N.A., Inc.*, 780 F.3d 283, 289 (Fed. Cir. 2015) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d at 319 (5th Cir. 2008)).

Both the parties and the District Court would be at risk of having fully litigated the issues in the Northern District of Texas, only to have the resulting judgment overturned when the Court grants the concurrently filed petition and orders dismissal or transfer of the case to the Western District of Washington. *Hoffman v. Blaski*, 363 U.S. 335, 342 n.9 (1960) (noting the "delays and expense of a futile trial."). Indeed, the District Court noted the "heavy stakes" associated with trying this case twice. Ex. 2 (Dkt. 236) at 24:5-11. Accordingly, the Court should issue a stay to protect the Petitioner from the substantial harm of litigating its case in an improper venue.

### III. Issuance of the Stay Will Not Substantially Harm iLife

iLife will suffer no harm from a stay of trial. Indeed, earlier in this litigation, iLife was amenable to moving the trial to October of 2017. Ex. 6 (Dkt. 199) at 1 ("iLife has informed NOA that it does not object to the dates proposed by NOA, subject to confirmation of the Court's availability to conduct trial beginning on or about October 10, 2017").

Further, if the Court grants the requested relief, iLife will also "avoid the delays and expense of a futile trial." *Hoffman*, 363 U.S. at 342. After this Court resolves Petitioner's requested mandamus relief, the District Court will either dismiss the case or in the alternative, iLife will be able to proceed to trial—either in the Northern District of Texas or in the Western District of Washington.

## IV. Public Interest Lies in Granting a Stay

The public interest would be best served by granting the Petition to resolve the "basic and undecided" question of whether *TC Heartland* changed the patent venue law. *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)). Since the Supreme Court issued its *TC Heartland* opinion, district courts have split on this issue. *Compare Fusilamp, LLC*, Case No. 10-20528-CIV-ALTONAGA, 2017 WL 2671997 (S.D. Fl. June 12, 2017) (recognizing the retroactive application of *TC Heartland* under *Harper*); *Westech Aerosol Corp.*, C17-5067-RBL, 2017 WL 2671297 (W.D. Wash. June 21, 2017) (holding *TC Heartland* overruled Federal Circuit jurisprudence) *with Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, Case No. 2:15-CV-00021-HCM-LRL, 2017 WL 2556679 (E.D. Va. June 7, 2017) (*TC Heartland* did not change the law); *Elbit Systems Land*, 2017 WL 2651618 (E.D. Tex. June 20, 2017) (same); *The Chamberlain Grp., Inc.*, Case No. 16-C-6097,

10

Dkt. 407 (N.D. Ill. June 28, 2017) (same); *Amax, Inc.*, No. 16-10695-NMG, Dkt. 90 (D. Mass. June 29, 2017) (same).

The resolution of this change-of-law issue would have wide-reaching effects on litigations across the United States. It the Court denies a stay pending resolution of the Petition, it will forego the opportunity to address these issues before this case goes to trial.

Additionally, the public interest is best served by trying cases in a proper venue, rather than wasting judicial resources on a futile trial in an improper venue. As Judge Newman recently acknowledged, "it is at trial that the purposes and policy of proper venue become dominant. The processes of law are designed not for the convenience of judges, but as safeguards to litigants and warders of justice." *In re Sea Ray Boats, Inc.*, 2017 WL 2577399, at *2 (Newman, J., dissenting) (denial of petition for writ of mandamus ordering transfer under *TC Heartland*). Trial is scheduled to start on August 21, 2017. Absent a stay, the parties and the District Court will likely finish the trial before the arguments are heard on Petitioner's request for a Writ of Mandamus.

## CONCLUSION

Accordingly, Petitioner respectfully requests that the Court grant its motion and order a stay of the case below until the Petition for Writ of Mandamus is resolved and that the Court order expedited briefing for this motion.

Dated: July 10, 2017                    Respectfully submitted,

                                        */s/ Stephen R. Smith*
                                        Stephen R. Smith
                                        Rose S. Whelan
                                        James P. Hughes
                                        Cooley LLP
                                        1299 Pennsylvania Ave., NW
                                        Suite 700
                                        Washington, DC 20004
                                        Telephone: (202) 842-7800
                                        Facsimile: (202) 842-7899

                                        Matthew J. Brigham
                                        Dena Chen
                                        Cooley LLP
                                        3175 Hanover Street
                                        Palo Alto, CA 94304

                                        *Attorneys for Petitioner*
                                        *Nintendo of America Inc.*

# EXHIBITS IN SUPPORT

# EXHIBIT 1

1                    IN THE UNITED STATES DISTRICT COURT

2                  FOR THE NORTHERN DISTRICT OF TEXAS

3                              DALLAS DIVISION

4
  ILIFE TECHNOLOGIES, INC.,      )        3:13-CV-4987-M
5                  Plaintiff,    )
                                 )
6                                )
  VS.                            )        DALLAS, TEXAS
7                                )
                                 )
8  NINTENDO OF AMERICA INC.,     )
                   Defendant.    )        May 11, 2017
9

10

            TRANSCRIPT OF TELEPHONE CONFERENCE HEARING
11
            BEFORE THE HONORABLE BARBARA M. G. LYNN
12
                  UNITED STATES DISTRICT JUDGE
13

14
     A P P E A R A N C E S:
15

16
     FOR THE PLAINTIFF:          MR. MICHAEL C. WILSON
17   (By telephone)              Munck Wilson Mandala LLP
                                 12770 Coit Road, Suite 600
18                               Dallas, Texas  75251
                                 mwilson@munckwilson.com
19                               (972) 628-3675

20
                                 MS. JORDAN CHRISTINE STRAUSS
21                               Munck Wilson Mandala LLP
                                 12770 Coit Road, Suite 600
22                               Dallas, Texas  75251
                                 jstrauss@munckwilson.com
23                               (972) 628-3600

24

25

```
 1  FOR THE DEFENDANT:          MR. STEPHEN R. SMITH
    (By telephone)             Cooley LLP
 2                             1299 Pennsylvania Avenue NW
                               Washington, DC  20004
 3                             stephen.smith@cooley.com
                               (202) 842-7800
 4

 5                             MR. MATTHEW J. BRIGHAM
                               Cooley LLP
 6                             3175 Hanover Street
                               Palo Alto, California  94304
 7                             mbrigham@cooley.com
                               (650) 849-7400
 8

 9                             MR. THOMAS C. WRIGHT
                               Cunningham Swaim, LLP
10                             7557 Rambler Road, Suite 440
                               Dallas, Texas  75231
11                             twright@cunnighamswaim.com
                               (214) 646-1495
12

13

14

15

16

17

18

19  COURT REPORTER:            MR. TODD ANDERSON, RMR, CRR
                               United States Court Reporter
20                             1100 Commerce St., Rm. 1625
                               Dallas, Texas  75242
21                             (214) 753-2170

22

23        Proceedings reported by mechanical stenography and

24  transcript produced by computer.

25
```

1    TELEPHONE CONFERENCE HEARING - MAY 11, 2017

2              **P R O C E E D I N G S**

3        THE COURT:  Good morning, everyone.  Let me have

4    appearances, please.  For iLife?

5        MR. WILSON:  Good morning, Your Honor.  This is Mike

6    Wilson at Munck Wilson Mandala, and I'm joined by Jordan

7    Strauss.

8        THE COURT:  Okay.  And for Nintendo?

9        MR. SMITH:  Good morning, Your Honor.  Stephen Smith

10   along with Matt Brigham from Cooley LLP, and Tom Wright is also

11   on the phone from Cunningham Swaim.

12       THE COURT:  Okay.  A couple of apologies, first for

13   being a little late this morning.  I had some attorney

14   admissions out there, and one of them works for my husband and

15   brought her mother, so it took a little longer than I thought,

16   but a very nice occasion.

17       Secondly, my apologies for not getting the advice to

18   you about my rulings before I did, and I will have a long

19   opinion that I will issue that I haven't finished just yet, but

20   I know how I'm coming out, so that's why I told you.

21       I think you-all probably know I've been somewhat

22   engaged, so I'm surfacing now and getting to business that I've

23   had to put on the back burner, so I regret the delay in getting

24   that to you, but now you have it.

25       So my -- I've reviewed and considered the issues that

1    are raised in the scheduling order modification request, and I

2    am not inclined to reset the trial, and I am inclined to move

3    your dispositive motion date to June the 1st but allow you to

4    supplement that to the extent that expert discovery warrants

5    it, a short supplementation with a shortened response reply

6    date.  So that is my inclination.

7            I want -- and I'll get comment from you before I

8    finalize that, but that's my preliminary view.

9            I wanted to go back for a moment to the conflict and

10   this issue that I'm raising now, because you-all would not have

11   had reason to believe I would bring this up today, but I wanted

12   to just revisit the issue of the week of August the 14th.  I

13   know that is a Japanese holiday, and I'm not suggesting that we

14   proceed with witnesses that week, but I wondered if you-all

15   wanted to consider picking the jury then.

16           So that is not something that I need to hear from you

17   right now about -- you can let me know that later if you're not

18   prepared to discuss that today.  If you are, then we'll discuss

19   it today.

20           Assuming that I stick with the schedule that I've

21   outlined, your trial dates will be as follows:

22           August the 21st, 22nd, and maybe -- I've got to work

23   something around -- maybe the morning of the 23rd, not the 24th

24   and the 25th.  The 28th, the 29th, 30th, that should finish you

25   for trial based on the estimates you've previously given us,

5

```
1    and then the jury will deliberate.
2           If the jury has not decided the case on the 31st,
3    then I need you-all to agree that another judge can preside
4    over the deliberations because I will be unavailable on the
5    1st.  I have a professional commitment that has come up since
6    this case was set.  So that's the -- that's my plan subject to
7    hearing from you.
8           So I think -- I'll begin with iLife, although I think
9    iLife will say, "That's fine by me."
10          MR. WILSON:  Your Honor, that's fine by me.
11          THE COURT:  Okay.  All right.  Now, surprise me,
12   Nintendo, say, "That's fine by me," and then I can say, "Have a
13   nice day."
14          MR. SMITH:  Well, Your Honor -- I would love to
15   surprise you, Your Honor, but unfortunately I'm not going to be
16   able to.  And I appreciate and we appreciate your preliminary
17   ruling in allowing us to at least try to convince you
18   otherwise, Your Honor.
19          We just think that given where we are and the way the
20   dates fall out that it would be consistent with what we agreed
21   on early on in the case for the scheduling order and allow the
22   parties to proceed in a very orderly fashion, not having the
23   supplementation on the briefing, allowing us to get the
24   experts' depositions in and then filing the motions and then
25   giving Your Honor an important amount of time to consider these
```

1   motions.

2        You and I have talked about the indefiniteness one a

3   number of times.  There's some meaty motion issues that are out

4   there that I think are going to take a little bit of time to

5   consider.  So that was the reason why we tried to reach an

6   agreed-upon schedule with iLife and not push this back, you

7   know, an inordinate amount of time.

8        I think the proposed schedule, subject to obviously

9   Your Honor's, you know, inclination, was to just push it back

10  to early October.  This way it would provide a little bit more

11  orderly and efficient process and give you time to consider

12  these big issues.

13       So that's where we were, Your Honor.  I understand

14  your inclination.  But we didn't think we're going to unduly

15  delay this case.  It was less than about 40 or 50 days, I

16  think, that --

17       THE COURT:  Now, you're -- let me interrupt you for a

18  minute.  And this is never on the radar for lawyers, nor should

19  it be, but you're bridging my clerk year.

20       And Kate Marcom, my law clerk, who's in here right

21  now with me and the court reporter -- that's all who's in

22  here -- has worked on this case quite intensively with me.  And

23  if she's gone, I've got a brand-new clerk on this case who

24  knows nothing about it.

25       So that is an important administrative issue to me,

1    and I've made very clear to her that if we hold your feet to

2    the fire that we have a lot of work to do and have to get it

3    done quickly and thoroughly, and she's committed to that.  So

4    that is a significant factor from my end that otherwise could

5    very well relate -- result in a further delay, because this

6    is a -- this is a complex matter to throw at a brand-new law

7    clerk.

8            MR. SMITH:  Your Honor, I appreciate that.  Having

9    been in Kate's position, clerking many, many moons ago, I

10   appreciate that concern.

11           One way to alleviate that is maybe we could -- I

12   think under our proposal we had dispositive motions on the

13   20th, but we could move that up a week or so and still get the

14   expert depositions in and allow you-all some time to consider

15   the --

16           THE COURT:  Well, I don't have a -- this is not going

17   to be a deal-breaker with me if that June date slides a little

18   bit.  That's going to just put more heat on us, but I get that.

19           If you can accommodate not having to do a supplement

20   by moving that a bit, then I'm going to allow you to do that,

21   and I'm instructing iLife to be reasonable about that and work

22   hard on the scheduling so that you have a reasonable date --

23   I'd say we could live with the 10th if we have to.  Give us as

24   early a date as you can that allows you to only file one set of

25   documents.  That will save some time for us in the back end

1   anyway.  So that's okay with me if you want to.

2            MR. WILSON:  On that issue -- I'm sorry.

3            THE COURT:  No.  You're up.

4            MR. WILSON:  The only -- this is Mike Wilson, Your

5   Honor.  And I mentioned this to counsel for Nintendo yesterday.

6   My only concern on moving it back to, say, June 10 or

7   something -- and I had mentioned this on the proposed schedule

8   that was submitted to the Court, but having it on June 20th, is

9   I do have a patent trial in Judge Mazzant's court starting

10  July 10.  And I don't know what to expect, but I'm expecting

11  pretty heavy motion practice on, you know, Daubert and MSJ, and

12  I didn't want the briefing happening while I'm in trial.

13           And so the June 1 date would complete -- if we have

14  35 days of briefing, it would complete the briefing at least

15  before I disappear for trial, so -- whereas June 10 might be

16  more problematic.

17           THE COURT:  Okay.  I'll hear back from Nintendo on

18  that.

19           Can we -- I mean, the issue of that date, as I

20  understand it, is two things:  getting the depositions taken

21  and getting the motion written.  So in terms of getting the

22  depositions taken, you-all can control that, so --

23           MR. SMITH:  We --

24           THE COURT:  Go ahead.

25           MR. SMITH:  Oh, I'm sorry, Your Honor.  I did not

1    mean to interrupt you.

2            THE COURT:  No.  That's okay.  No problem.

3            MR. SMITH:  We can, Your Honor -- thank you.  Subject

4    to the availability of the witnesses, and then also we have the

5    response of expert reports due on the 23rd, so we would need a

6    little bit of time to digest those.  But, yes, we can work with

7    those, and we can move the -- move those dates.  And we

8    appreciate Mr. Wilson's conflict and will work with him.

9            What I'm concerned about is the supplementation issue

10   that you identified earlier and then on the back end Your Honor

11   having -- you having enough time and your law clerk having

12   enough time to digest these issues.

13           And so I didn't know if Kate was leaving in early

14   September or late September or if there was an opportunity if

15   we just pushed it back by a few weeks, the trial, and then

16   everything would be still a little compressed, but maybe it

17   would work out a little bit better for everybody in terms of --

18           THE COURT:  It's not -- it's not going to work for

19   me.  It won't work for me.

20           MR. SMITH:  Okay.

21           THE COURT:  So --

22           MR. SMITH:  I appreciate that.

23           THE COURT:  -- I'm going to give you the trial date I

24   gave you.  I want you-all to work with each other on these

25   scheduling issues.  And I want --

```
1              What is your other date before Judge Mazzant, Mike?
2         MR. WILSON:  July 10, Your Honor.
3         THE COURT:  Okay.  So I'm assuming that if the
4    response date is at the end of June that that's going to work.
5    So that gives you a little bit of play on when the original
6    motion is due.
7              In other words, he's got 20 --
8         MR. WILSON:  That would be true for --
9         THE COURT:  He's got 20 days to respond.  I don't
10   care if he's getting ready for trial when the reply brief is
11   due, because he's not writing that.
12        MR. WILSON:  That is true, Your Honor.  I do expect
13   we might file some motions.  We have already filed one motion
14   for summary judgment which the Court ruled on this week.
15             I do expect -- I mentioned this to Steve yesterday.
16   I do expect to ask for leave to file on a couple of other
17   discrete issues, so I would have a reply brief, therefore, on
18   my motion during trial.  But, look, I will work with Steve on
19   trying to figure out --
20        THE COURT:  Yeah, I think -- I'm not going to
21   micromanage that, but --
22        MR. WILSON:  Yeah.
23        THE COURT:  So I'm suggesting you can move that date
24   back to the 10th, or you can even move it up if you want to.
25   It all sort of depends on the scheduling of experts, which is
```

1  out of my control.

2          Now, let me --

3          MR. WILSON:  So --

4          THE COURT:  I'm sorry.  Go ahead, whoever is talking.

5  There's a little bit of a delay here, so you-all are not

6  offending me if you're stepping on me.  It just is the fault of

7  the system.

8          MR. WILSON:  And this is Mike Wilson again.  So as I

9  understand it, you're going to let us pick the summary

10 judgment/Daubert deadline no later than June 10th?

11         THE COURT:  Correct.  Yes.

12         Now, are you-all okay with that little bit of a

13 broken schedule?  We're not going to finish if we wait until

14 the 28th, so I think we're going to have to do it.  I'm just

15 putting you on notice of it so you'll -- so you will be mindful

16 of it.

17         I am going to time you-all, and I'll back into the

18 timing given the dates that I have for you.  So you-all can

19 suggest timing, but it's got to fit in that block.

20         And because the 23rd is still shaky, I want you to

21 assume we don't have it.  If we do have it, I'll give it to you

22 and I'll give you a little bit more time.  But assume you don't

23 have that date.  And I --

24         MR. WILSON:  And the pre --

25         THE COURT:  The pretrial, I'll figure that one out

1   and let you-all know when that will be.

2          MR. WILSON:  In the previous week, Your Honor, the

3   week of August 14th, which I think we originally were

4   scheduled --

5          THE COURT:  Yeah.  That's what I -- that's the --

6   yes, thank you.  That's the other question I was going to ask

7   you, Steve.

8          I assume you'll find out.  I assume you can't answer

9   now, but if you can, go ahead.  Can you -- can you pick a jury

10  the week of the 14th or do you not want to?

11         MR. WILSON:  Your Honor, I'm going to need to

12  confer --

13         THE COURT:  Okay.

14         MR. WILSON:  -- with my client on that.

15         THE COURT:  So --

16         MR. WILSON:  And then I'm going to have to take a

17  look at it.

18         THE COURT:  Okay.

19         MR. WILSON:  My apologies.

20         THE COURT:  So I can't -- no, I didn't -- I should

21  have let y'all know I was going to ask you that.  So we'll

22  assume not.  And assuming not, then I'll have the pretrial that

23  week.

24         MR. WILSON:  Okay.

25         THE COURT:  I don't know if --

 1          MR. WILSON:  So starting trial that week is not a
 2    possibility?
 3          THE COURT:  Well, you're the -- yes, it is.  I could
 4    put that back together again, but you -- I'm responding to your
 5    request that it was a problem for your -- certain of your
 6    witnesses.
 7          (Simultaneous speaking)
 8          MR. WILSON:  Yeah.  Okay.
 9          THE COURT:  That -- I'm sorry.  I --
10          MR. WILSON:  That was Mike Wilson.  I should have --
11          THE COURT:  Yeah.  Okay.  I wasn't sure.  I wasn't
12    sure who was talking.
13          Yeah, Steve had filed -- now, the date -- the
14    August 14th date was the date I had picked based on your
15    proposal, but then Steve found out after your proposal that his
16    clients couldn't be there, so I took that week off the
17    schedule.  I could still have a trial that week or any part of
18    it.
19          So that -- as a matter of fact, when I was working on
20    your requests, I noticed it's a mistake on our internal
21    calendar.  It's still there on the 14th.  So I would be
22    available for it, but I'm not going to undo what I said unless
23    Steve feels like he would like to start the end of the week,
24    middle of the week, witnesses on his side would be available
25    early in the next week, so you would start -- it just depends

1    who these people are and how important.

2            I am not going to undo what I said unless, Steve, you

3    agree to it.  But if you want to go that week before, I've

4    still got a slot for you because I -- we inadvertently did not

5    take you off of it.

6            MR. SMITH:  Your Honor, Steve Smith, just to make

7    sure everybody knows who's speaking.

8            Thank you.  I will circle back with the client

9    that -- I believe it's Golden Week in Japan, but I will circle

10   back to see if there's a possibility of starting earlier.

11           My preference is to go continuous with the trial.  I

12   don't like when they're broken up, because obviously as a

13   defendant we go second, so I would rather have the trial

14   continue in one -- one coherent piece.

15           So we'll look into that to see if there's some ways

16   that maybe we can make that work.  But right now, I guess the

17   short answer is I don't have -- I don't know, and so I'll try

18   to get --

19           THE COURT:  Yeah.  Okay.

20           MR. SMITH:  -- with Mr. Wilson over the next couple

21   of days and submit --

22           THE COURT:  Okay.  All right.  Well, I'm going to

23   leave you as you are just so that slot doesn't get taken by

24   anybody else.  And, of course, I will expect Mr. Wilson to

25   accommodate you if some witnesses would need to come in out of

1    order.

2          Now, I've got -- I have a naturalization ceremony

3    during that week.  It would probably take an hour.  I'll just

4    give the jury an early lunch and do it somewhere else so that

5    we don't have to mess up our courtroom.

6          So I'm good that week.  I could go straight through

7    that week, or we could start later in the week and go into the

8    first part of the following week.  So that's a better, more

9    continuous slot.  And because my court calendar misled me, I

10   was thinking that would be clear sailing, and then Kate pointed

11   out to me that we had moved you and I hadn't taken it off the

12   calendar.

13         So if we could recapture that in some way because, of

14   course, you know, if we started, say, on the 17th -- say we

15   picked the jury on the 16th and we started on the 17th, as long

16   as, Steve, you could have witnesses that you need and you're

17   not missing introducing someone that you want to to the jury,

18   then you'd have your time presumably starting the first part of

19   the following week without a break.

20         So that's better if we can do it, but I'm not

21   faulting anybody.  That's -- that's a schedule not of any -- a

22   scheduling difficulty not of anybody's making.  So if we can

23   work around the holiday, then so be it.  If we can't, then

24   we'll do the best we can on the schedule I've given.  Okay?

25         All right.  That's all I --

```
 1            MR. WILSON:  Thank you, Your Honor.

 2            MR. SMITH:  Thank you, Your Honor.

 3            THE COURT:  That's all I have unless you-all have

 4   anything else you want to bring to my attention.  Okay?

 5            MR. WILSON:  Nothing else from iLife, Your Honor.

 6            THE COURT:  Okay.  Thank you-all.

 7            MR. SMITH:  Nothing from Nintendo.

 8            THE COURT:  Okay.  Thanks again.  Bye-bye.

 9            MR. WILSON:  Have a good day.  Bye-bye.

10            THE COURT:  Bye.

11            (Hearing adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       I, TODD ANDERSON, United States Court Reporter for the

2   United States District Court in and for the Northern District

3   of Texas, Dallas Division, hereby certify that the above and

4   foregoing contains a true and correct transcription of the

5   proceedings in the above entitled and numbered cause.

6       WITNESS MY HAND on this 22nd day of May, 2017.

7

8

9                             /s/Todd Anderson
10                            TODD ANDERSON, RMR, CRR
                              United States Court Reporter
11                            1100 Commerce St., Rm. 1625
                              Dallas, Texas  75242
12                            (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

```
1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF TEXAS
2                         DALLAS DIVISION

3   iLIFE TECHNOLOGIES, INC.,        )
                                     )
4                    Plaintiff,      )
    v.                               )
5                                    )   No. 3:13-CV-04987-M
                                     )
6   NINTENDO OF AMERICA, INC.,       )
                                     )
7                    Defendant.      )

8                 TRANSCRIPT OF MOTIONS HEARING
             BEFORE THE HONORABLE BARBARA M. G. LYNN
9                    FRIDAY, JUNE 23, 2017
                        DALLAS, TEXAS
10
    APPEARANCES:
11
    FOR THE PLAINTIFFS:   MR. MICHAEL C. WILSON
12                        MUNCK WILSON MANDALA, LLP
                          12770 COIT ROAD
13                        SUITE 600
                          DALLAS, TX  75251
14                        (972) 628-3600
                          mwilson@munckwilson.com
15
                          MS. JORDAN STRAUSS
16                        MUNCK WILSON MANDALA, LLP
                          12770 COIT ROAD
17                        SUITE 600
                          DALLAS, TX  75251
18                        (972) 628-3600
                          jstrauss@munckwilson.com
19
                          MR. S. WALLACE DUNWOODY
20                        MUNCK WILSON MANDALA, LLP
                          12770 COIT ROAD
21                        SUITE 600
                          DALLAS, TX  75251
22                        (972) 628-3600
                          wdunwoody@munckwilson.com
23

24

25
```

```
 1   FOR THE DEFENDANT,
     NINTENDO OF AMERICA:   MR. STEPHEN R. SMITH
 2                          COOLEY, LLP
                            1299 PENNSYLVANIA AVENUE NW
 3                          WASHINGTON, D.C.  20004
                            (202) 842-7800
 4                          stephen.smith@cooley.com

 5                          MR. MATTHEW BRIGHAM
                            COOLEY, LLP
 6                          3175 HANOVER STREET
                            PALO ALTO, CA  94304
 7                          (650) 849-7400
                            mbrigham@cooley.com
 8
                            MR. THOMAS C. WRIGHT
 9                          CUNNINGHAM SWAIM, LLP
                            7557 RAMBLER ROAD, SUITE 200
10                          DALLAS, TEXAS  75231
                            (214) 646-1495
11                          twright@cunninghamswaim.com

12                          MR. ALEX JOSEPH WHITMAN
                            CUNNINGHAM SWAIM, LLP
13                          7557 RAMBLER ROAD, SUITE 200
                            DALLAS, TEXAS  75231
14                          (214) 646-1495
                            awhitman@cunninghamswaim.com
15
                            MR. CLYDE MOODY SIEBMAN
16                          SIEBMAN, BURG, PHILLIPS & SMITH, LLP
                            4949 HEDGCOXE ROAD
17                          SUITE 230
                            PLANO, TEXAS  75024
18                          (214) 387-9100
                            clydesiebman@siebman.com
19
     PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
20   PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
     ------------------------------------------------------------
21
                      D. KEITH JOHNSON, RDR, CRR
22               FEDERAL OFFICIAL COURT REPORTER
                    UNITED STATES DISTRICT COURT
23                  NORTHERN DISTRICT OF TEXAS
                 1100 COMMERCE STREET, ROOM 1572
24                    DALLAS, TEXAS  75242
                        (214) 753-2325
25               keith_johnson@txnd.uscourts.gov
```

```
1                    P R O C E E D I N G S
2                  (June 23, 2017)
3                  (Court opening)
4                  (Attorney admissions)
5         THE COURT:  All right.  The Court has scheduled for
6  this morning oral argument on the motion to dismiss or
7  transfer for improper venue filed by Defendant Nintendo of
8  America, Inc., in Case Number 13-4987.
9         Let me say that I don't know if the attorneys are
10 aware of it, but there's a brand new case that was decided on
11 this issue by Judge Leighton in the Western District of
12 Washington, Westech Aerosol Corporation versus 3M company,
13 decided on the 21st.  This case, unlike the others that have
14 been cited to the Court, concluded that the decision in TC
15 Heartland, quote, changed the venue landscape and allowed the
16 assertion of the motion to transfer, and the Court granted
17 that.
18        So actually I'm not sure that the Court granted the
19 motion.  I think this was a question of whether the motion
20 could be -- whether the issue could be asserted.  The
21 defendant was moving for leave to amend to assert the defense,
22 and the Court held that the amendment could be -- would be
23 granted.  So on the issue -- I read the import of Judge
24 Leighton's decision to be that this issue was not waived.  The
25 other cases, in the Court's view, seem to go the other way.
```

 1          I'm familiar with this issue.  I knew the day TC

 2     Heartland was decided that I would get motions like this, and

 3     there are going to be enough of these that somebody is going

 4     to have to decide it.  I'm also very familiar with Judge

 5     Newman's very well done dissent on the issue of whether this

 6     is new law.

 7          I think it's fair to say that from the perspective

 8     of the Federal Circuit, this is new law; from the perspective

 9     of the Supreme Court, this is old law, because Fourco has been

10     there ignored for lo these many years.

11          So I will hear argument.  I'm just going to tell

12     you-all that my inclination on this is to deny the motion and

13     to conclude, without finding fault, that you-all are very fine

14     lawyers.  And I'm not finding fault when I say this.  But I

15     think given that the Supreme Court has spoken to the subject

16     in Fourco, that the existence of contrary authority in the

17     Federal Circuit does not mean that when the Supreme Court

18     restates what has been the law all along that that makes it

19     new law, and I think the issue has been waived.

20          Because again, this is not finding fault.  I don't

21     think anybody did anything wrong.  I recognize that lawyers

22     have assumed these many years that the Federal Circuit

23     approach to this was correct, but obviously the issue was not

24     foreclosed, because if it was, TC Heartland would not have

25     been successful in the case in which it appeared before the

1    Supreme Court.

2          So that's my preliminary view on it.  But I'm going

3    to give you-all full argument on this.  I have more than once

4    given a preliminary indication of how I was going to come out

5    and not come out that way.  But I think it's helpful for

6    lawyers to sort of know what the Judge is thinking, instead of

7    looking at me like a blank slate.  So that's my inclination,

8    but it's subject to your convincing me otherwise.

9          So, Mr. Smith, we'll begin with you.

10         MR. SMITH:  Thank you, Your Honor.

11         Thank you, Your Honor.  And I'd just like to

12   introduce my partner, Matt Brigham, along with Tom Wright and

13   Alex Whitman from Cunningham Swaim and Clyde Siebman, who is

14   longtime counsel for Nintendo in Texas.

15         And thank you, Your Honor, for your preliminary

16   thoughts.  Greatly appreciate it.  So let me just dive into

17   the nub of the issue.

18         So why is it a change of the law?  Well, it's a

19   change in the law when you look at Judge Payne's decision that

20   came out recently that was cited in -- by the other side in

21   their notice of supplemental authority.  I think it's the

22   Elbit decision.  And you look at Judge Morgan's decision in

23   the Cobalt/Sea Ray cases, in my neck of the woods, in the

24   Eastern District of Virginia, it's clear that the focus was

25   misplaced, Your Honor.  With all due respect to those judges,

1  the focus was on the Supreme Court, and it wasn't on what was

2  binding and whether or not the Federal Circuit could overrule

3  the Supreme Court.

4         I don't think any sane lawyer would suggest that

5  the Federal Circuit could overrule the Supreme Court.  But it

6  misses the point, with all due respect to those judges, that

7  when you trace the arc of after Fourco and you look at the

8  1988 amendments in the VE Holding case, Your Honor, what's

9  telling in that case is the Federal Circuit saying this was a

10 matter of first impression.  And what was that matter of first

11 impression?  The amendments to the 1998 -- excuse me -- '88

12 amendments to 1391(c), they said was a matter of first

13 impression that Fourco did not deal with.

14         Interestingly, in that opinion, they say the

15 1391(c) that was in front of Fourco is no longer.  This is a

16 matter of first impression, we're operating under our

17 authority to interpret a statute of Congress, and we believe

18 Congress' intent is clear, and Congress superseded -- Congress

19 overruled the Supreme Court in Fourco.

20         So for 20-something -- over 25 years, all of us,

21 Your Honor -- yourself included, us as lawyers -- were bound

22 by that decision.  That was the --

23         THE COURT:  I'm going to interrupt you for a

24 moment.

25         I don't agree with that.  If an argument had been

1    made to me -- and it never was made in this case or any

2    other -- that the law is Fourco and Fourco trumps the decision

3    in VE, then if I agreed with that, I say I have to follow

4    Fourco.  I don't have to follow the decision of the Federal

5    Circuit.  That's the key issue to me.

6              If I read this as the law is what the Federal

7    Circuit said it was, and I didn't have Fourco, and the Supreme

8    Court says that that's wrong and now we write a new decision

9    that says what the law is, that's a different issue.  My focus

10   is did the Federal Circuit follow the law in Fourco.

11             Now, I recognize there's a great deal of hindsight

12   in this, because --

13             MR. SMITH:  Sure.

14             THE COURT:  -- if anybody thought there was that

15   wiggle room, there's only one person in the world that thought

16   there was that wiggle room, and that's the lawyer for TC

17   Heartland.

18             MR. SMITH:  Professor Duffy, right, exactly.

19             THE COURT:  Yes.  I've been on a panel with him.

20   He's really smart.  And I'm sure he's crowing about the fact

21   that he stood alone on this.

22             But when you read the decision in TC Heartland, the

23   Supreme Court seems to be saying, "I don't know what you guys

24   were doing all this time, because Fourco is the law."

25             MR. SMITH:  That is true, Your Honor.  But I think

1    if you go back and look at -- in addition to the VE Holding,

2    if you look at TC Heartland, the panel decision written by

3    Judge Moore, I think that really crystallizes the issue for

4    litigants, for us who are having to plead and sign our name to

5    papers under Rule 11 and what basis that we had other than a

6    modification of existing law.

7            And what did Judge Moore say, Your Honor?  I think

8    this is telling.  She first rejected the argument made by

9    Judge -- excuse me -- by Professor Duffy and his co-counsel

10   that the 2011 amendments to 1391(c) somehow changed the law of

11   VE Holding, and she quickly rejected that for the panel.

12           And then what was more interesting, there was this

13   novel argument that the litigants made about 1391(a), where

14   there was "except as otherwise provided by law" language over

15   the general venue statute, and they were making an interesting

16   argument to say, well, 1400(b) is the "except as otherwise

17   provided by law."

18           And in rejecting that argument, it was telling what

19   Judge Moore said for the Court.

20           If Your Honor may, I want to pull up this decision

21   and put it on the Elmo for a moment.

22           THE COURT:  Which case are you reading from?

23           MR. SMITH:  This is the panel decision in In Re:

24   TC Heartland, 821 F 3d 1338.  And the part that I want to

25   raise, Your Honor, put up on the Elmo, is this piece right

1    here.   Hopefully it will show up.

2            And it's this piece down here at the end where I

3    have my scratch mark in blue.  It says, "In VE Holding, we

4    found that the Supreme Court's decision in Fourco with regard

5    to the appropriate definition of corporate residence for" --

6    pardon me, Your Honor.  I've got to push this over -- "for

7    patent cases in the absence of applicable statute to be no

8    longer the law, because in the 1988 amendments, Congress had

9    made the definition of corporate residence applicable to

10   patent cases."

11           And then the opinion goes on.  In 1988, the common

12   law definition of corporate residence for patent cases was

13   superseded by a Congressional one.

14           And I want to stop right there.  Forgive me, Your

15   Honor.  I -- there it is.  Maybe that will do.

16           That's the nub of the issue, in our opinion, Your

17   Honor, right there.

18           What is the Federal Circuit is saying?  The Federal

19   Circuit is saying Fourco is no longer good law.  Why?  Because

20   Congress, not us, not the Federal Circuit -- we can't overrule

21   the Supreme Court, but Congress sure can.  I don't think

22   anybody would argue that Congress couldn't overrule Fourco and

23   amend the venue statutes.  And that's what, turns out

24   erroneously, that the Federal Circuit decided, that the

25   Supreme Court's common law case -- that's what they're talking

1    about, Fourco -- was superseded by a Congressional one.  And

2    so all of us were bound by that, albeit we had an opportunity

3    under Rule 11 safe harbor provisions to argue for a

4    modification of existing law.  But that's what we were all

5    bound by.

6              And so is, I think, the fatal mistake or a

7    fundamental law, Your Honor, for the cases that hold -- and

8    this is the Elbit decision and Judge Morgan's decision, where

9    they talk about you can't overrule the Supreme Court if you're

10   the Federal Circuit.  The Federal Circuit --

11             THE COURT:  Do you regard me as bound by that

12   decision interpreting prior Supreme Court jurisprudence?  I

13   don't have to follow that.

14             MR. SMITH:  Yes, you --

15             THE COURT:  No, I don't.  If the Federal Circuit

16   says the law of the Supreme Court in Fourco is X, and I

17   believe that the law in the Supreme Court, reading the Supreme

18   Court case, is Y, I'm to follow the Supreme Court.  I'm not to

19   follow the Federal Circuit.

20             MR. SMITH:  Right, Your Honor.  We all know that

21   the Supreme Court, at the end of the day, is the highest

22   authority.  No one is arguing that.  But unless and until the

23   Supreme Court acts, we're bound by the Federal Circuit.

24             I can't walk in here, for example, and say -- or to

25   another district judge, or even the Federal Circuit, and say,

1   "Well, you're all wrong; I'm following the Supreme Court."

2              THE COURT:  Well, I agree with you -- well, hold on

3   now.  I'll take that one up.

4              If the -- this is the issue.  If there hasn't been

5   Fourco, clearly you would win.  I mean, the problem is that

6   there is Fourco.  And if the -- if the Federal Circuit says

7   Fourco means this, and I think Fourco means that, I'm

8   obligated to follow my interpretation of Fourco.

9              You disagree with that?  You think I'm obligated to

10  follow -- and I'm not being critical of the Federal Circuit.

11  But do you think I am required to follow the law of the

12  Federal Circuit in its interpretation of preexisting Supreme

13  Court jurisprudence if I believe that the Federal Circuit is

14  misreading preexisting Supreme Court jurisprudence?

15             MR. SMITH:  I believe you have to follow, like we

16  do, Your Honor, the Federal Circuit's precedence.

17             If you believe -- just like us, if we believe

18  they're wrong, we have avenues to raise that.  But I think

19  that's a side issue, with all due respect, Your Honor.  We

20  always can ask for a modification of the law and say that the

21  Federal Circuit got it wrong.

22             THE COURT:  Well, but it begs the question of

23  whether it's a modification of the law or the law.  And that's

24  why I'm harping on this.

25             You can look at this from various perspectives.

But if you look at it the way I'm inclined to look at it, the
Federal Circuit wrongly interprets prior Supreme Court
jurisprudence, and that's what TC Heartland says.  And if the
Federal Circuit is wrongly interpreting preexisting Supreme
Court jurisprudence -- I'm very willing to be convinced
otherwise on this, but I don't think you're going to find any
cases that say, whether it was the Federal Circuit or Fifth
Circuit, either one and whatever it might be, interpreting
prior Supreme Court jurisprudence, that I'm obligated to
follow that.  If I believe the interpretation of existing
Supreme Court jurisprudence is wrong, I don't think I am
obligated to follow it.  And this goes to the issue of whether
this is new law or not.

          MR. SMITH:  Right, Your Honor.  I think the -- if
you crystallize the issue, if the Federal Circuit comes down
with a rule -- and remember -- and I think this veers to a few
sentences.

          The Federal Circuit wasn't overruling Fourco.
That's not what the Federal Circuit did.  They know they
can't.  What the Federal Circuit said was Congress did, and
they acted in their capacity to interpret a statute.

          So say Congress came out and flatly says 1400(b)
does not apply -- excuse me -- 1391 does not apply to 1400(b),
and they did that in the 2011 amendments, I think we'd all
agree that the Federal Circuit would be able to opine and rule

1    on that Congressional statute and say it no longer applies,

2    therefore you have to follow the rules of the road and

3    Congress overruled Fourco.

4           That's exactly what they were doing here, but

5    according to the Supreme Court, they got it wrong.  And that,

6    I think, is the nub of the issue that the Federal Circuit laid

7    down a rule that we had to follow unless and until the Supreme

8    Court or Congress changed it.

9           THE COURT:  All right.  Let me ask you a different

10   question, and then I'll let you fully argue the matter.

11          Should I attach any significance to the fact that

12   in the decision that came up from your court, from the Eastern

13   District of Virginia, that the Federal Circuit denied a

14   mandamus -- now, there's an extensive opinion that I've

15   alluded to by Judge Newman that always is very well written

16   and perceptive.  There's no opinion by the judges in the

17   majority.  I think it was Judge Moore -- I can't remember who

18   the third judge was.

19          MR. SMITH:  I think it was Judge Wallach.

20          THE COURT:  I'm sorry.  It was Judge Stoll and --

21          MR. SMITH:  Yes, Your Honor, and Wallach.

22          THE COURT:  No opinion by them.  Should I attach

23   any significance to the fact that they are reviewing a

24   district court who denied a motion on the eve of trial and

25   obviously the issue was, is the trial going to go forward in

1  the wrong venue, and they denied the mandamus?  Should I

2  attach any significance to that?

3       MR. SMITH:  No, Your Honor, I would not attach any

4  significance to that, because they didn't articulate the

5  reasoning other than it's an exceptional remedy.  The writ of

6  mandamus is a exceptional remedy only to be granted in

7  extraordinary circumstances.

8       THE COURT:  Well, it's pretty extraordinary if a

9  case is going to go to trial in the wrong venue.  In

10 particular -- I recognize -- I think you're correct in your

11 statement of how I should generally construe the denial of the

12 mandamus.  But it's an unusual circumstance here, because of

13 the interplay between the Supreme Court's decision and the

14 Federal Circuit's decision, the fact that the case is about to

15 go to trial, and that Judge Newman, in her fine dissent, tees

16 up the issue square.

17      So in light of those circumstances, you're still of

18 the view that it could be a myriad of reasons that I shouldn't

19 construe it as a merits-based decision?

20      MR. SMITH:  Sure, they could have easily -- and the

21 Federal Circuit is only a few blocks away.  We have Federal

22 Circuit clerks who are in our office, Your Honor, so we're all

23 trying to read the tealeaves.  And there's a myriad of reasons

24 why they might not have thought that this was the case where

25 they need to come down on and interpret it.

1          Judge Newman thought it should have been.  But the
2    real issue there was a motion to stay and then getting into
3    the merits, and they denied the motion to stay.
4          Clearly, I think we all think that they could flip
5    the case and send it back to the appropriate district -- I
6    think it was district of Tennessee, one of the districts in
7    Tennessee -- after the fact.  It seems like a waste of time,
8    as Judge Newman said, but certainly they could do that.  For
9    whatever reason, they didn't think that this was the vehicle
10   for them to opine on this or to rule on this.
11         Because, Your Honor, you said it early on, you're
12   getting a number of these motions in front of you, as soon as
13   TC Heartland came down, you knew you were going to confront
14   this issue.  And Fed Circuit judges know that they -- they
15   have already started getting a flood -- a few mandamuses that
16   are starting to popping up, and there are going to be more.
17   So they're going to have to address this issue head on.
18   Whether it's en banc, I don't know.  I don't know what the
19   Chief Judge is going to do.  We're all trying to figure that
20   out, but it is going to be squarely addressed.  That's why I
21   wouldn't attach too much significance to that mandamus denial,
22   particularly when there's no articulated reason.
23         If they had said something, Your Honor, where,
24   "Hey, we don't think this is a change in the law" or "we think
25   you waived it," or something of the like, I would agree you

1   would have much more power.  But here it's a bland denial that

2   is typical, that just cites the extraordinary standards for

3   mandamus.  So I don't think we could hold too much sway on

4   that.

5           And I think Judge Newman's dissent gets it right.

6   She clearly says it's a change in the law.  She hits it

7   squarely right on.  It's a substantive right that you have for

8   venue, to be tried and have a case tried where you reside or

9   you have regular established course of business.  And she

10  recognized the law is what it was for 20-something years.  And

11  she's been -- she's been there for the whole time.

12          THE COURT:  Yes.

13          MR. SMITH:  And a well represented voice.  It's not

14  a voice in the wilderness, Your Honor.

15          THE COURT:  Yes, I agree.  I know her and have

16  great respect for her.

17          MR. SMITH:  So I think that's the nub of the issue,

18  to come back full circle.

19          And, again, I appreciate this Court's candor of

20  coming on the bench and telling us preliminarily where you

21  will rule.  But I will invite Your Honor's attention to reread

22  the TC Heartland panel decision, particularly the parts that I

23  pointed out, and also the original VE Holdings decision where

24  again it's not Fed Circuit versus Supreme Court, it's -- "we

25  think Congress superseded you."  I think that's the term that

1    they use.

2          THE COURT:  Well, but if you -- if you were

3    starting this case the day after the panel decision in TC

4    Heartland, you would be, I believe, asserting that venue was

5    incorrect in my court, notwithstanding that decision, because

6    you know that thing is on the way -- or have good reason to

7    believe that case is on the way to the Supreme Court.  I mean,

8    this is in the middle of its travels up to the Supreme Court

9    on this very issue of venue.

10          So I don't know how much comfort you -- I mean, it

11    all -- all parties -- at least once cert was granted,

12    everybody in the world knew that that might come out the way

13    it did.  And so it would seem to me -- I'm not quite sure I

14    see the point.  The Federal Circuit interprets the history

15    here to validate its position of 20-plus years on this very

16    issue.  And yet one knew, as a matter of certainty, that there

17    was a distinct possibility that it would come out differently.

18          If you were just playing the numbers, given the

19    number of cases that are reversed when cert is granted, you

20    can see that there was not-an-insubstantial prospect of

21    reversal.

22          MR. SMITH:  Right, Your Honor.  And I think you

23    started the hypothetical with if the day after the panel

24    decision and if cert was granted, sure, I think a prudent

25    lawyer would do that.  But lawsuit is still the law, according

1    to all of us.  And the Federal Circuit's decision in VE

2    Holding and TC Heartland are the law unless and until the

3    Supreme Court tells us otherwise.

4           So we weren't in that situation.  We were years

5    before when the law was settled, and I don't think anybody

6    thought that the law was different.

7           In fact, we went back and looked at the argument in

8    front of Judge Stark in Delaware that Professor Duffy -- I

9    think it's Dabney or Dufney -- had with Judge Stark.  And

10   Judge Stark asked the very question.  And he said, "Has this

11   ever come up, even in academic circles?"  Because he knew he

12   was a professor.  He said, "Has this ever come up?"  And the

13   response was, "No, Your Honor.  We are not aware that it's

14   ever come up.  We're not aware that it was ever an issue.  And

15   so as practitioners, we're all under the impression it was

16   settled law and that we were -- we were bound by the Federal

17   Circuit's decisions."

18          And I think -- and Your Honor has said this

19   earlier -- hindsight is obviously 20/20, but at that time no

20   one thought these lawyers -- and good credit to them -- no one

21   thought this argument would take hold until the Supreme Court

22   granted cert.  No one did.  Because cert was denied -- and I

23   don't have the exact citations, Your Honor.  But cert had been

24   denied before, I believe.  I think it was denied in the VE

25   Holding case itself.  And so it was never granted.  And once

1    it was granted -- I agree with you, the Supreme Court usually

2    doesn't grant cert on an issue where it's not going to weigh

3    in and typically overrule whatever decision was made.

4            So, Your Honor, I think that -- I don't want to

5    keep repeating myself.  I think the issue is if you go back

6    and look at those decisions, it was clear it was a

7    Congressional -- it was an interpretation of a Congressional

8    amendment in both cases, both VE Holding and the TC Heartland

9    panel decision, and the Court -- the Federal Circuit was clear

10   that Congress superseded the Supreme Court's Fourco decision.

11   The Supreme Court disagreed.

12           THE COURT:  Can you remind me, did TC Heartland go

13   to the entire Federal Circuit?

14           MR. SMITH:  I don't believe so, Your Honor.  The en

15   banc --

16           THE COURT:  I don't remember there was en banc.

17           MR. SMITH:  I don't think there was en banc on that

18   one, Your Honor.  I think they went right to cert --

19           THE COURT:  Okay.

20           MR. SMITH:  -- to the Supreme Court.

21           And then I just want to -- unless Your Honor has

22   any more questions, I think the issue is pretty -- it's a

23   narrow issue.  Is it a change in the law?  Is it not?  If it's

24   a change in the law, we believe under the Supreme Court's

25   opinions, under -- starting in American Trucking, tracing it

through James Beam, Harper and Reynoldsville, it's pretty

clear.  If the Supreme Court announces a new rule, change in

the law, applies it to the case before them, and it needs to

be applied retroactively without regard for the particular

equities in a case.  I think that's pretty clear under Harper.

Footnote 9 in that decision lays it out.  And essentially what

the Supreme Court has done is overruled the Chevron test that

we all grew up with in law school where it was a balancing of

the equities on retroactivity.

        THE COURT:  Well, if you're correct, what happens

to all of the cases in America that have been tried in the

wrong venue?

        MR. SMITH:  That's a great question, Your Honor.

And the answer, the Supreme Court has provided that.  And I

believe it's in Harper and Reynoldsville, where they said the

issue of finality will trump that.

        So if you're not on appeal, then the case is over.

You're not going to reopen a case, for example, that has been

tried or settled.

        THE COURT:  60(b)?

        MR. SMITH:  They seem to suggest otherwise, Your

Honor.  They seem to suggest that there's some point in

time -- we can't go back three years and start applying the

law retroactively to cases that have already been tried and

adjudicated under different law.  But the Supreme Court is

clear, if it's still going on, if the case is still going on,

it needs to be applied.

I mean, Justice Thomas's opinion was very strong

language.  Because if you trace the arc of the Supreme Court's

jurisprudence on retroactivity -- you may recall the

Linkletter case said that the criminal law -- new criminal

statute or decision by the Supreme Court would not be applied

retroactively.  And then the Supreme Court overruled that in

Griffith.  That was '67 case, the Linkletter case, I believe.

And then after that, you have this arc of cases on

the civil side where the Supreme Court started getting a

plurality, and then finally you see a majority in Harper

saying, "No, we're going to reject Chevron; we apply it

retroactively to cases that, number one, there's a change of

law, we apply it to the case before us, and then you have to

apply -- it's your duty to apply it, Judges."

And so I think that was a big change in the law.

You see it over a couple of years.  So, Your Honor, they would

not apply it -- to answer your question again directly, they

would not apply it to cases that were final.  All our cases, I

think, Harper and its progeny, stand for the clear proposition

that we have to.

And then on the issue of waiver, the issue of

waiver really is subsumed by if is it a change in the law.  I

mean, as matter of logic and law, we can't waive what we don't

1    have.  We didn't have that right, if it was a change in the

2    law.

3            And secondly, Your Honor, if it's a change in the

4    law, I think Former Chief Judge Fitzwater's case, in the

5    Peacock decision that was cited in the notice of supplemental

6    authority by our opponents -- and that's on Page 39 of the

7    Elbit decision -- Judge Payne cited that Judge Fitzwater

8    decision saying, if you don't have the right under Rule 12 on

9    improper venue, you don't waive it.  And Judge Fitzwater's

10   opinion is very interesting.  In very short prose; he takes

11   care of this argument and says, well, the defendant didn't

12   have the right to raise improper venue at the time, they

13   couldn't have waived it, and in a very telling footnote, he

14   says "And that's consistent with the purposes of Rule 12."

15           What's the purpose of the waiver of Rule 12?  The

16   purpose of the waiver provisions of Rule 12 is so we don't, as

17   defendants, come in here piecemeal and present all of these

18   defenses one after another, a couple months later and a couple

19   months later.  And his point was, that's not what's happening

20   here, because you didn't have the right.  That's the same

21   here, Your Honor --

22           THE COURT:  Well, the difference is -- I'm not sure

23   this makes a legal difference, but I'll just make sure it's

24   clear on the record.  You admitted that venue was proper.  You

25   did more than just waive your right to move to transfer venue.

1    Your answer says venue is proper here.

2              MR. SMITH:  Right, based upon existing law at the

3    time as we and others had interpreted.  And I don't think it

4    makes a difference.  Because when you look at the Gucci

5    decision, for example, coming out of the Second Circuit that

6    we've cited, they address this very issue in the Gucci

7    decision on Page 135, 768 F 2d, we cite this -- or F 3d, I

8    believe -- in our brief.  And there the Second Circuit was

9    confronted with a similar issue.  Remember when Daimler came

10   down from the Supreme Court on jurisdiction, and the case

11   before them, Gucci, was up on appeal, Your Honor.  Not at the

12   trial court.  It was up on appeal.

13             And the argument was raised, well, you waived

14   personal jurisdiction, you didn't raise it consistent with

15   Rule 12, similar to venue.  It's one of the personal defenses

16   you can raise.  And the Second Circuit rejected that and said,

17   quite frankly, although you came in and entered an appearance,

18   walked into the court and didn't carve out that you were there

19   for a special appearance and you just submitted to the

20   jurisdiction of the Court without more, and the Court said,

21   no, you didn't waive it or you didn't accept or admit

22   jurisdiction, because you didn't have this right.  Daimler

23   came out after the fact.  So I think that case is square on

24   all fours, same as the Peacock decision.

25             I think waiver again, Your Honor, is subsumed in

retroactivity.  Is it retroactive?  Yes.  Then you can't waive
what you don't have, I think, as a matter of logic and law.

THE COURT:  All right.  Thank you very much,
Mr. Smith.

All right.  Mr. Wilson, let me ask you a question
to start.  So if Mr. Smith is ultimately correct and I deny
the motion, then we've had a trial, he's gotten a sneak peek
at all your stuff, heard all your witnesses, and then he comes
back, gets me reversed and goes off where he wants to be in
the first place.  Those are pretty heavy stakes for you.  So
you've got to feel really confident that you're correct.

MR. WILSON:  Well, I think we are correct.  And I
think there are a number of issues that Mr. Smith didn't
address that I think are controlling.

Let me start with this.  I don't think there's any
question that if you read TC Heartland and then if you go back
and read Fourco, which I hadn't read until TC Heartland came
out, that it's clear that three-and-a-half years ago when it
came time for them -- for Nintendo to file an answer or
Rule 12 motion, they could have raised the exact same
objections that TC Heartland raised by Rule 12 motion, you
know, a year ago.  There's just no question about that.

THE COURT:  Well, I don't think he's questioning
that he could have.  He's questioning whether he should have
or whether he had a Rule 11 obligation to -- in effect, not to

1    it, because he didn't have a good faith basis to believe that

2    that was the law.

3          MR. WILSON:  Well, I think we can see that that

4    position is incorrect.  I mean, TC Heartland raised it without

5    violating any Rule 11 obligations, and we've seen a number of

6    other parties that have raised an objection or filed a Rule 12

7    motion prior to TC Heartland.

8          I mean, not only had TC Heartland raised in -- the

9    Cobalt case, the Eastern District of Virginia case that came

10   out, Sea Ray, one of the defendants, had objected to venue as

11   improper under 1400(b).  One of the cases cited by Nintendo in

12   its brief, the Script v. Amazon case out of the Eastern

13   District, Amazon had filed a Rule 12 motion based on 1400(b)

14   that venue is improper.

15         So other parties were doing it.  And in the last

16   three-and-a-half years, nothing has changed.  The venue

17   statute hasn't changed.  The rules haven't changed.  And it's

18   critical, as Court has already mentioned here, that the

19   objections that TC Heartland raised were entirely based on the

20   decision in Fourco.  They weren't based on anything

21   intervening.  And there's no dispute that Fourco had not been

22   revisited by the Supreme Court in 60 years.  For whatever

23   reason, the Supreme Court hadn't revisited, the Supreme Court

24   hasn't overturned it, and as Your Honor has already pointed

25   out, it therefore stood as good law.  And TC Heartland raised

 1    it as Nintendo should have done here.  And they made a

 2    conscious decision not to do that.

 3              If we can -- and I do have some slides.  If we can

 4    switch the source for the -- for the computer on our side,

 5    Your Honor.

 6              THE COURT:  It should be coming up now.  Have you

 7    got it on there now?

 8              MR. WILSON:  Your Honor, would you like a copy of

 9    the slides?

10              THE COURT:  Yes.  I don't know why I'm not getting

11    it on my screen though.

12                   (Pause in proceedings.)

13              THE COURT:  Okay.  There we go.

14              Yes, I would, please.

15              MR. WILSON:  As I said, and the Court mentioned --

16    if we can go to the next slide, please -- Nintendo made a

17    conscious decision not to raise venue either by Rule 12 motion

18    or even by objection in their answer.  And we have on four

19    different occasions, in two separate pleadings, a direct

20    admission, not only that venue is proper under 1391, but also

21    as we've underlined here, that it's proper under 1400(b).

22              And they're bound by those statements in their

23    pleadings.  That's never been addressed in their briefs.  It's

24    not been addressed by any of the other courts that they're

25    citing to.

1          We have a direct judicial admission at the

2     beginning of the case, which is when you are required to take

3     a position on venue, that venue was proper in this court.

4          THE COURT:  Well, let's say that -- let's assume,

5     for the sake of this discussion, that what the Supreme Court

6     did in TC Heartland is new law.  I'm not conceding that.  I'm

7     not acknowledging that.  But for the sake of this discussion,

8     I want to assume that.

9          Would you still be arguing waiver based on these

10    statements in the answer?

11         MR. WILSON:  Yes, Your Honor, absolutely.  I think

12    the rule is clear -- if we can go to the next slide.

13         When the Supreme Court created these rules, it made

14    the decision that these defenses, venue and personal

15    jurisdiction, can be forfeited or waived.  There's no

16    exception in the rule.  They could written the rule

17    differently that allowed amendment in certain circumstances,

18    and they didn't.

19         THE COURT:  My answers are going to be twice as

20    long if lawyers are required to plead everything that might be

21    available to them if the Supreme Court in every decision ever

22    written was wrong.

23         MR. WILSON:  I understand the impracticallities,

24    but we're bound by the rules.  I mean, the Supreme Court has

25    the power to create these rules.  They carry the weight of

```
 1    statute.  And these are the rules that we've been handed.  And
 2    the rules make it very clear, with no exception, that with
 3    respect to venue, personal jurisdiction, and certain other
 4    defenses, you have to make a decision at the very onset of the
 5    case what you're going to do and whether or not you're going
 6    to forfeit that personal privilege as to personal jurisdiction
 7    or venue.
 8              THE COURT:  Okay.  Well, I'm going to short circuit
 9    this part of your argument, Mr. Wilson.  I am not going to
10    rule for you on the basis that parties are obligated to plead
11    legal defenses that are contrary to existing Supreme Court
12    law.  I'm just not going to hold that.  I don't think that's a
13    fair and reasonable interpretation of the rule.
14              If the -- I mean, that would just be nightmarish
15    for every case that lawyers would have to plead things that
16    would be violating their obligations under Rule 11 to assert
17    positions that are contrary to existing law.  I'm just not
18    buying that.
19              MR. WILSON:  I understand, Your Honor.
20              What I would say is, we're talking about
21    application to very specific procedural defenses like venue
22    and personal jurisdiction.  This rule doesn't apply to other
23    types of pleadings.  For example, you know, admitting other
24    facts or other law.  We're talking -- Rule 12 is talking about
25    very specific procedural defenses -- if we can go to the
```

comments -- that when they passed these, the Supreme Court in
passing these decided that they're of such a nature that we
need -- and the Court mentioned finality -- or Nintendo did --
we need finality at the very beginning of the case.

THE COURT:  So I'm going to give you an example.

Are you arguing that if there were a Supreme Court
case that said that mailing correspondence into the
jurisdiction was sufficient to vest personal jurisdiction over
the person from outside the jurisdiction in the jurisdiction?

In other words, if Party A mails correspondence to
Party B in Texas and does nothing else, if there was a Supreme
Court case that said that subjects Party A to jurisdiction in
Texas, and then the Supreme Court changed the law to say, "New
court in town, that's ridiculous, that doesn't comply with due
process, mailing a letter in is not sufficient," that a party
would be foreclosed after that second decision from contesting
personal jurisdiction?  How can that possibly be?

MR. WILSON:  I would say two things about that.

We're bound to follow the rules as they're written,
and the rules provide no exception for intervening change of
law.  And so when you read the rules, they're very, very plain
as to when you waive it.

And second, what I would say is, there is no --
we've got a Fifth Circuit law hear, and I think that there is
no Fifth Circuit case cited by either party that suggests

1   there's an exception to Rule 12 waiver.  And of course, here

2   we have beyond waiver; we have an admission.  But there's no

3   Fifth Circuit law that supports the idea that an intervening

4   change in law would provide an exception.  All we have is some

5   Second Circuit law, which I don't think this Court should

6   follow.

7          So I think we're left with a situation where a

8   district court would have to decide whether to create a common

9   law exception to the plain language of Rule 12, and I don't

10  think a district court should do that.  I think a district

11  court should follow the rules as written and as guided by the

12  advisory committee notes, and then if there's no exception

13  created within the district, is bound to apply the rules as

14  they're written.

15         THE COURT:  Okay.  So there's a lot of discussion

16  in your briefs, both parties, about the Martinez case.  And I

17  think that's the principal case that you rely on, on this

18  issue.  The difference between this case and Martinez is that

19  Martinez is an issue of a -- an issue being raised for the

20  first time on appeal, not raised at the trial level.

21         I mean, is it -- I want to make sure I'm following

22  you.

23         Do you believe that I am, by Fifth Circuit law,

24  precluded from allowing this issue to be now asserted?

25         MR. WILSON:  What I -- what I believe is that the

1   Court is bound to apply the strict language of the rules,

2   which is a "shall," mandatory waiver language and that the

3   Court would need an established Fifth Circuit exception, based

4   on intervening law, in order to undo -- allow them to undo the

5   waiver.

6          Obviously we don't believe there's been an

7   intervening change of law.  Our position is very clear on

8   that.  And I'm happy to address our interpretation of Fourco

9   and TC Heartland.  But I believe that the Court would need

10  guidance from the Fifth Circuit, that when it comes to a

11  statutory waiver, under Rule 12, that there would be an

12  established common law exception, and that does not exist.

13         The Court is correct that Martinez and some other

14  courts have addressed the issue of whether somebody can raise

15  something for the first time on appeal.  That's not the issue

16  we're dealing with here.  The rules require both parties to

17  raise venue at the very outset of the case.  The plaintiff is

18  required to plead it, and the defendant is required to respond

19  to that pleading of venue.  This isn't something that's being

20  raised for the first time now.  The parties raised it in the

21  complaint and in the answer.  We alleged that venue was

22  proper, Nintendo admitted that venue was proper.  So we're not

23  dealing with a Martinez situation where somebody is raising an

24  issue for the first time.  It's been raised.  It's been

25  admitted.  And under the rules, it's waived and there's also a

1   judicial admission.  And I think that the Elbit Systems Court,

2   Judge Payne, was correct, that they're bound by that

3   admission.

4           So --

5           THE COURT:  Well, I want to make sure I'm -- I'm

6   following you.  I think what I'm about to say is correct.

7   That neither Judge Morgan for Judge Payne decided the issue of

8   waiver as a separate standalone issue separated from the issue

9   of whether this was a change in the law.

10          MR. WILSON:  I think that's correct, Your Honor.

11  As I read Judge Payne's opinion, the issue was raised of

12  whether or not there is an intervening law exception.  And

13  what Judge Payne said is, "I don't have to get to that issue,

14  because I find that there's intervening change in law."  And

15  so Judge Payne did not decide whether or not that exception

16  exists in the Fifth Circuit or in this court.

17          In the Eastern District of Virginia, the Court had

18  Fourth Circuit law that had established the exception, a

19  common law exception for intervening change of law, which does

20  not exist in the Fifth Circuit, and then went on to say there

21  is no intervening change in law.

22          And so I think that's the -- the posture of it.

23          THE COURT:  Okay.

24          MR. WILSON:  So I'm happy to address, you know,

25  Fourco --

1          THE COURT:  No, I don't think you need to.  I mean,

2    I'm -- I think the issue is pretty squarely teed up.  And I --

3    the concern that I have is the same concern that I expressed

4    at the very beginning, that I think if you took a poll at the

5    Federal Circuit, "Did TC Heartland change existing law?"

6    Separate from the particular case in which they were ruling,

7    they all might say, "Yeah.  We've been thinking it was

8    something else this whole time."  And the Supreme Court vote

9    would be exactly the opposite.

10         Now, how that would be impacted on the Federal

11   Circuit reviewing issues like the one before me, I don't know.

12         MR. WILSON:  Well, I think, you know, we're clearly

13   bound by Supreme Court precedent.  Fourco stood.  The language

14   in Fourco is very, very clear.  It's actually shocking when

15   you go back and read Fourco that more defendants hadn't raised

16   this issue given the fact that Fourco specifically addressed

17   and rejected what VE Holdings said they were doing.  I mean,

18   Fourco came in and said 1391 is the wrong section to look at;

19   you can't look at a general venue provision when you're

20   talking about patent venue.  You should not do this.  You need

21   to look at 1400(b) and 1400(b) only; specific controls over

22   general; and this is -- this is the law in terms of patent

23   venue, and that has stood there since 1957.

24         And, in fact, if you read TC Heartland, they said,

25   "We meant what we said.  That's still the law.  1400(b)

1  controls; 1391 does not."

2          THE COURT:  So what if I call my colleagues up in

3  the state of Washington and I say, "Specially appoint me.

4  I'll be there in August to try this case in Washington"?

5          MR. WILSON:  Your Honor mentioned that when it came

6  time to motion to transfer venue.

7          THE COURT:  I like Washington.

8          MR. WILSON:  I do, too.  I do, too.

9          But we don't think transfer is proper.  We think

10  this is the right court.  We think it's been admitted and

11  waived and that there is no exception.  And we think that

12  Cobalt and Elbit Systems are correct.

13          THE COURT:  Clearly you're the one taking the big

14  risk here.  I mean, I'm taking the risk of getting reversed.

15  But that's what lifetime tenure is for.

16          So if I -- I mean, if I rule for you and you try

17  this case, we've expended a lot of resources.  But as I said

18  at the beginning, you've given your opponents a free look at

19  your whole case and then the case gets bundled back, sent over

20  to Washington and start over, and they've got a significant

21  advantage having seen your stuff.

22          MR. WILSON:  Your Honor, we think the prejudice of

23  moving the case now is extreme.

24          THE COURT:  Well, there's potential prejudice

25  either way you look at it, depending on what is the correct

1    analysis.

2            There is no doubt that this issue being raised

3    now -- trial is not tomorrow, but I think it's not an

4    overstatement to say it's on the eve of trial.  That's not --

5    I'm not saying that with fault.  I've already said that.  I

6    know why this is being addressed now, and I think every

7    argument that was asserted by Mr. Smith is in good faith.

8            So you're prejudiced if this case were to get moved

9    at the last minute like this.  They're prejudiced if they're

10   in the wrong court and they didn't waive it and this is law

11   that is new that the Court should consider.

12           So the potential prejudice is all wrapped up with

13   the merits.

14           MR. WILSON:  I will say this.  I don't think venue

15   is of such prejudice that --

16           THE COURT:  Well, it's not jurisdiction.  It's not

17   constitutional.  Venue is not a constitutional issue.  It's a

18   statutory issue.

19           MR. WILSON:  I don't think it's fair to assume that

20   the law is going to be applied unfairly or differently in a

21   different venue.  There's no -- there's no -- they've not

22   established that being here is going to change the outcome of

23   the case or their substantive rights.  It's a procedural

24   privilege, jurisdiction and venue.

25           And the way that Rule 12 is written recognizes

that; it allows you to waive it.  And we've cited a number of

cases on Page 6 of our response where the courts have held,

Rule 12 is designed so that if you don't do what is required

in Rule 12, it turns a court of improper venue into a court of

proper venue.  That's the way the rules were established, and

that's what happened in this case when they answered, admitted

venue, didn't file a Rule 12 motion.

THE COURT:  Are you saying that I do not have

discretion to allow them to assert this defense now?

MR. WILSON:  I believe that's right, Your Honor.

The rule is -- the rule is clear on 12(h), it says that the

only time you can do it is a Rule 12 motion, in your answer,

or an amendment as a matter of right under Rule 15.

The rule is very, very specific that the only time

you can amend to change your position on venue or personal

jurisdiction is within that 21-day period allowed by Rule 15,

amendment as a matter of right.

THE COURT:  Okay.  Thank you.

All right.  So Mr. Smith, what -- from your

perspective, what Mr. Wilson is offering you is a mock trial

with me participating.  I mean, imagine how much people would

pay to get the real judge to preside over a mock trial.

MR. SMITH:  I don't think you could put a price on

it, Your Honor.

THE COURT:  Priceless.

1          MR. SMITH:  Yes, I think we absolutely, for the

2    record, would agree.

3          And we agree with Your Honor, it's their chance to

4    take.  It's a tremendous waste of resources.

5          I want to address a few issues that he raised just

6    so it's clear.

7          THE COURT:  Well, let me ask you -- before you do,

8    I want to clarify something, just so that I can envision the

9    world that you would like to see here.

10          If I transferred this case to the Western District

11   of Washington, is everything that we've done so far in any way

12   binding on you?  Do you get to start over on the Markman?

13          MR. SMITH:  I think, Your Honor, that would be up

14   to the trial judge.

15          THE COURT:  So you're point is, it's not the law of

16   the case; it's as if this never was, that all these years

17   we've been together has -- is as if it never occurred?

18          You're stipulating that you're moving the case --

19   and I'm not asking you to -- you would not be stipulating,

20   presumably, that everything that occurred in this case to this

21   point is binding.  We've been here for four years, not quite,

22   and from your perspective venue was wrong from day one and,

23   therefore, the case should have been in Washington and the

24   judge in Washington should start again?

25          MR. SMITH:  Well, Your Honor, I think that's --

1    that's --

2              THE COURT:  Except for all my rulings that you

3    like.

4              MR. SMITH:  Yes, Your Honor.

5              I think for practical purposes, all the depositions

6    would stay the same.  We wouldn't get another bite at

7    depositions.  I think there would be a number of issues that

8    would stay the same, and we would probably voluntarily

9    stipulate to that.

10             But in terms of just the legal theory of whether --

11   let's just say it's Judge Martinez in the Western District of

12   Washington.  Would Judge Martinez be technically bound by your

13   claim constructions?  No.  Would I think Judge Martinez would

14   have another Markman hearing?  I don't know.  I think most

15   judges are so busy, federal judges, that they would probably

16   continue on.

17             THE COURT:  I think I'm going to make a statement

18   for anyone who might be interested, that if TC Heartland

19   results in a bunch of cases coming here, that on my wish list

20   of things I'd most like to do, in the top 50 is not redo

21   someone else's Markman.

22             MR. SMITH:  I'm surprised it's even that high, Your

23   Honor.

24             THE COURT:  I said it wasn't in the top 50.  That

25   leaves a lot of room.

1          MR. SMITH:  I think there's a -- there's a line,

2     right, between the academic and the practical.  I think as a

3     practical matter, I don't think a trial judge in a busy docket

4     is going to redo the entire case and start at ground zero.  I

5     think it's not going to happen.  We wouldn't start at ground

6     zero.  So I think it's not -- your question was everything

7     we've done for four years, is that a waste of time?

8     Absolutely not.  The vast majority, if not everything, will be

9     pretty much the same, I believe.  So it wouldn't be that

10    inefficient, Your Honor.

11         But just -- if I may, Your Honor, just a few quick

12    points on waiver, because I think it's very important.

13         Mr. Wilson keeps talking about you're bound by the

14    rules, and, of course, you're bound by the rules.  But the

15    rules presuppose that we had the right to waive.

16         If you look at 12(g), for example -- and invite

17    Your Honor's attention to that.  This is 12(g)(2).  And this

18    is in the context of making a Rule 12 motion and talking about

19    waiving the rights; if you don't raise certain defenses,

20    personal jurisdiction, venue in that initial Rule 12 motion,

21    you waive them.

22         But the rule specifically says, "Under this rule,

23    raising a defense or an objection that was available to the

24    party but omitted from its earlier motion."

25         So it has to be available to the party to waive it

1    by motion.  Here I think that seasonably applies to answering

2    as well without raising the issue.  They have to be in

3    existence, the rights that you're going to assert.

4              And I think the Second Circuit cases are clear.

5    The Hawknet case that we cite actually has some great language

6    that Mr. Brigham and I were laughing about last night.  And

7    they say -- and really it gets to the heart of the issue.  A

8    litigant doesn't have to be clairvoyant.  They have to be

9    conscientious.  And that's the touchstone of this, of the

10   waiver issue.

11             We were conscientious.  We followed the existing

12   law that was in effect.  And as Your Honor said it, I think if

13   you polled every Federal Circuit judge before TC Heartland

14   Supreme Court case came down, they would think that was the

15   existing law; we thought it was the existing law; and,

16   therefore, we haven't waived that right.

17             And I think the Gucci decision and the Hawknet

18   decision cut to the matter.  And then Chief Judge Fitzwater's

19   decision in Peacock addresses this in the related -- addresses

20   waiver of venue in the related situation where it wasn't

21   raised in an initial motion because the right didn't exist to

22   complain about venue.

23             So we think for all of those reasons, Your Honor,

24   you have the authority to find that there's not a waiver in

25   the event that there's an intervening change of the law.

1          A couple other points, Your Honor.

2          I'd just like to respond again that if we sharpen

3    this issue of change of law down to the sharpest point, it

4    comes down to Congress can overrule the Supreme Court.  I

5    don't think anybody could ever dispute that, particularly when

6    it's in the context of a Federal Rule of Civil Procedure or a

7    venue provision.

8          So what we're faced with as litigants -- and I

9    think this is the big point -- not from the Supreme Court's

10   point of view, but from the litigant's point of view, the

11   Federal Circuit, the highest court that's binding on us,

12   absent the Supreme Court, in these patent cases, said to us,

13   clearly, twice, the law -- Fourco is no longer the law,

14   because Congress overruled it.

15         And as I said before, say Congress specifically

16   overruled Fourco in a statute and says "Fourco is overruled,"

17   we would have to follow the Federal Circuit on that.  We

18   wouldn't say, "Well, we can follow the Supreme Court."  That's

19   exactly what happened here.

20         And the fact that the Supreme Court said -- really

21   what they said was, "Congress did not overrule us.  You can't

22   over us, Fed Circuit.  But Congress didn't overrule us."  And

23   that's the nub of the issue.  It was a matter of statutory

24   interpretation.  The Fed Circuit was absolutely within its

25   province to pronounce what the law is vis-a-vis a

1    congressional statute and whether --

2              THE COURT:  Well, I take your point.  I mean,

3    you're threading the needle with an argument that this isn't

4    just a question of pick B or pick Fourco.  The issue is that

5    the Federal Circuit, and particularly in the panel decision in

6    TC Heartland itself, did something that was not done in

7    Fourco; it analyzed congressional action since Fourco and that

8    the Court would be bound to follow the Federal Circuit's

9    interpretation of what Congress did.

10             MR. SMITH:  That's exactly right.  And I think

11   Judge Plager's opinion in VE Holding said this is an issue of

12   first impression.  This is an issue of first impression.  What

13   was he referring to?  1391(c).  And of course the litigants in

14   that case raised -- the plaintiffs in that case said, "No, no,

15   no, no, Fourco -- Fourco is the law of the land."  And they

16   raised that very issue and they said these amendments to

17   1391(c) in 1988 by Congress did not obviate or supersede

18   Fourco.  And the Federal Circuit rejected that and said, no,

19   we think it's a straightforward application to interpret

20   Congress' will and apply the statute.

21             And then when we see Judge Moore, she really

22   sharpened that issue and said congressional will superseded

23   common law.  And if we boil that down for you and I, Your

24   Honor, it's Congress trumped the Supreme Court, and that was

25   no longer the law.  And that really is the nub of the issue.

1              And that's why I started off before, respectfully,

2    that Judge Morgan and Judge Payne, they focused on the Supreme

3    Court and the Federal Circuit, but really the Federal Circuit

4    was looking at Congress.  And I don't think there's a

5    dispute -- I haven't heard anybody raise their argument,

6    haven't seen it in all of the literature -- that Congress

7    couldn't come in and change the law at any point for venue and

8    get rid of 1400(b) or make 1391 specifically applicable to

9    1400(b).

10             For example, if Congress today passed a law signed

11   by the President and said, "We really don't like the Supreme

12   Court's TC Heartland decision," they could do that.  And so

13   that's really the issue.  And I think this focus on the -- on

14   the judges and on the courts is a little bit misplaced,

15   because we were all bound for 20-something -- 25 years by that

16   law, and that really -- the change in the law was the Supreme

17   Court came in and said, "No, Federal Circuit, you got the

18   Congressional intent wrong.  You got the statutory

19   interpretation wrong.  Not Fourco wrong.  You got Congress'

20   amendments" --

21             THE COURT:  All right.  I hear you.

22             MR. SMITH:  And lastly, Your Honor, I just want to

23   raise that in terms of the substantive rights, I think Judge

24   Newman's dissent recently addressed this issue.  And she cited

25   two cases there.  It's Leroy and the Lenox (sic) decisions

1  where the Supreme Court has reversed improper venue

2  determinations and cited and articulated that venue is a

3  substantive right; it's an important right.

4         So I just wanted to raise that to end with, Your

5  Honor.  And if there's no more questions, I will --

6         THE COURT:  No.  Thank you, Mr. Smith.

7         MR. SMITH:  Thank you.

8         THE COURT:  I want to talk for a moment about the

9  practicalities of this.

10        I'm going to deny the motion.  I will write an

11 opinion.  I think it's very -- very well argued, Mr. Smith.

12 And I think the distinction that you reiterated at the last is

13 an interesting issue.  And if the Federal Circuit were to

14 reverse this Court on that basis, I certainly understand the

15 point that you've made.  I don't think that is correct, but I

16 understand the issue.

17        I am assuming that you would seek mandamus as well

18 from the Court's decision.

19        MR. SMITH:  Yes, Your Honor.  And we -- and we

20 appreciate you ruling from the bench and giving us your

21 ruling.

22        THE COURT:  Yes, I am, but I want to write

23 something short but quick, because I don't want them to have

24 to figure out on the basis on which I'm so ruling.  So I will

25 get something to you by next week.

1          MR. SMITH:  Well, Your Honor, we greatly appreciate

2   that.  Thank you.  Thank you very much.  Greatly appreciate

3   it.

4          THE COURT:  Yes.  And I'm going to deny the motion,

5   and I will state briefly why.  I'm not going to write a very

6   lengthy opinion, because I want you to have the opportunity to

7   go up as quickly as possible.  Meanwhile, though, I'm going to

8   march us along to trial.

9          And to that end, let me ask you, Mr. Smith.

10  There's been -- and I'm confident this is inadvertent, but we

11  have not been receiving something from your side that I want

12  us to be getting.  You're supposed to send us, to the Court,

13  courtesy copies of any filings that are 25 pages or more, and

14  I haven't been getting those.

15         MR. SMITH:  Your Honor, I'm sorry.  I was not aware

16  of that.  We'll correct that immediately.

17         THE COURT:  Yeah, that's part of our -- of my

18  specific requirements, and that's to put the copy cost on the

19  people who have a lot of greenbacks, as opposed to the people

20  of the United States, who don't.

21         MR. SMITH:  I understand, Your Honor.  And I

22  apologize, Your Honor.  I didn't understand that we --

23         THE COURT:  No, no, that's no problem.

24         MR. SMITH:  And if there's anything specific --

25         THE COURT:  No, no.  We just -- literally it is

1    to -- for bulky documents, we're putting the copy time and

2    cost on the parties.

3              So if you can just get those to us.  And talk to my

4    clerk, and we'll tell you what we haven't already copied.  You

5    don't need to go back till the beginning of time, but just the

6    more recent filings.

7              MR. SMITH:  Appreciate it, Your Honor.  Thank you.

8    Apologize.

9              THE COURT:  Okay.  No problem.

10             All right.  Again, very fine argument.  I'm not

11   going to go as far as you're requesting, Mr. Wilson.  I hear

12   you.  I'm not going to come out quite as literally as you

13   would like, that no matter -- I mean, your position is it can

14   be changing the law from white to black and they waived it

15   nevertheless, and I don't think so.  So I'm not going to rule

16   for you to that degree.  I think that this is all tied up with

17   the issue of whether this is new intervening law, and I'm

18   going to write an opinion accordingly.  But to me the issues

19   are linked, they're not separate, to the degree that you're

20   argued.

21             Okay.  Anything else for today?

22             MR. SMITH:  No, Your Honor.  Thank you very much.

23             MR. WILSON:  Thank you, Your Honor.

24             THE COURT:  Okay.  Thank you-all.

25                  (Proceedings concluded.)

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3              I, D. Keith Johnson, RDR, CRR, Federal Official

4    Realtime Court Reporter, in and for the United States District

5    Court for the Northern District of Texas, do hereby certify

6    that pursuant to Sections 753, Title 28, United States Code,

7    that the foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12                   Dated this 23rd day of June, 2017.

13

14                   /s/ D. KEITH JOHNSON_____
                     D. KEITH JOHNSON, RDR, CRR
15                   TEXAS CSR NO. 3781
                     FEDERAL OFFICIAL COURT REPORTER
16                   1100 COMMERCE STREET, ROOM 1572
                     DALLAS, TEXAS  75242
17                   214.753.2325

18

19

20

21

22

23

24

25

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ILIFE TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:13-cv-04987 |
| | § | |
| NINTENDO OF AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

---

## MEMORANDUM OPINION AND ORDER

Before the Court is Nintendo of America, Inc.'s Motion to Dismiss or Transfer for

Improper Venue Under 28 U.S.C. § 1406(a) [ECF No. 206].  On June 23, 2017, the Court heard

oral argument on the Motion.  As stated on the record at the hearing, the Motion is **DENIED**.

The Court now issues this Memorandum Opinion and Order describing its reasons for denying

the Motion.

### 1. Background

iLife filed this patent infringement suit on December 23, 2013.  Nintendo filed its Answer

on April 28, 2014.  In ¶ 7 of the Answer, Nintendo stated:

> Defendant admits that venue is proper in this District pursuant to 28 U.S.C. §§ 1391
> and 1400(b). Defendant denies that the Northern District of Texas is a convenient
> venue for this dispute and reserves the right to transfer pursuant to 28 U.S.C.
> § 1404.

Answer ¶ 7.

On April 29, 2014, Nintendo filed a Motion to Transfer Venue pursuant to § 1404(a).

Nintendo broadly argued that the convenience factors under § 1404(a) supported a transfer to the

Western District of Washington, where Nintendo's headquarters are located in Redmond,

Washington.  In the alternative, Nintendo asked for the case to be transferred to the Northern

1

District of California.  Neither the motion nor the reply mentioned § 1406.  After oral argument

on the § 1404 Motion, the Court denied Nintendo's Motion to Transfer.  The Court noted that

Nintendo's headquarters were in Redmond, Washington, but that most of Nintendo's witnesses

would be travelling from Japan, and the difference in distance between Washington and Texas

for foreign witnesses was not significant for venue purposes.  Nintendo moved for

reconsideration of the denial, which the Court denied.

On November 28, 2014, Nintendo moved to file its Amended Answer to assert an

affirmative defense of inequitable conduct.  The Court granted Nintendo's motion; the Amended

Answer contained the same paragraph on venue as Nintendo's first Answer:

> Defendant admits that venue is proper in this District pursuant to 28 U.S.C. §§ 1391
> and 1400(b). Defendant denies that the Northern District of Texas is a convenient
> venue for this dispute and reserves the right to transfer pursuant to 28 U.S.C.
> § 1404.

Am. Answer [ECF No. 61] ¶ 7.

On May 22, 2017, the Supreme Court decided *TC Heartland LLC v. Kraft Foods Group

Brands LLC*, 137 S. Ct. 1514 (2017), holding that for purposes of the patent venue statute, a

corporation "resides" only in its state of incorporation.  Nintendo moves to dismiss or transfer

this case to the Western District of Washington under § 1406(a), contending that in light of *TC

Heartland*, venue is improper in the Northern District of Texas.  Jury selection and the pretrial

conference for this case is scheduled for August 14, 2017.  Trial is scheduled to begin the week

of August 21, 2017.

## 2. Legal Background

Section 1400(b), the patent venue statute, provides that:

> Any civil action for patent infringement may be brought in the judicial district
> where the defendant resides, or where the defendant has committed acts of
> infringement and has a regular and established place of business.

28 U.S.C. § 1400(b); *see also* Act of June 25, 1948, ch. 646, 62 Stat. 869, 936.

In *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957), the Supreme Court considered the relationship between § 1400(b) and the general venue statute, § 1391. The Supreme Court had earlier considered a similar question in *Stonite Products. Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942), specifically whether Section 48 of the Judicial Code, governing venue in patent litigation, was supplemented by Section 52, the general venue provision that predated Section 48.[1] In *Stonite*, the Court held that Section 52 did not alter the scope of Section 48, which was "the exclusive provision controlling venue in patent infringement proceedings," and enacted as "a restrictive measure, limiting a prior, broader venue." *Id.* at 566. "Congress did not intend the Act of 1897 to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent infringement proceedings." *Id.* at 565.

In 1948, the current version of the patent venue statute, § 1400(b), was enacted. Act of June 25, 1948. Ch. 646, 62 Stat. 869, 936. The general venue statute was amended in the same enactment, and consisted of one sentence which read:

> (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

*Id.* at 935.

The Supreme Court in *Fourco* was again called upon to consider the interplay between the patent venue statute and the general venue statute. When discussing the significance of recent changes made to § 1391 and § 1400(b), the Supreme Court held that for purposes of § 1400(b), a corporation "resides" only in its State of incorporation:

---

[1]Section 52 was derived from R.S. § 740, which in turn stemmed from the Act of May 4, 1858, c. 27, 11 Stat. 272. Stonie, 315 U.S. at 566. Section 48 was enacted from the Act of March 3, 1897, c. 395, 29 Stat. 695. *Id.*

Substitution of words "where the defendant resides" for "of which the defendant is inhabitant" in patent infringement venue statute, on ground that words "inhabitant" and "resident" were synonymous as respects venue, negatived intention to make corporations suable in patent infringement cases where they are merely "doing business," since the synonymous words mean "domicile" and in respect of corporations mean the state of incorporation only.

*Id.*

The Supreme Court in *Fourco* also discussed the interplay between § 1400(b) and

§ 1391, the general venue statute:

We think it is clear that § 1391(c) is a general corporation venue statute, whereas [§] 1400(b) is a special venue statute applicable, specifically, to all defendants in a particular type of actions, i.e., patent infringement actions. In these circumstances the law is settled that "However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the *same enactment*. . . . '"

. . .

We hold that 28 U.S.C. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c).

*Id.* at 229 (emphasis added).

Since the decision in *Fourco*, Congress has not amended § 1400(b).  In 1988, however,

Congress amended § 1391(c) to read as follows:

(c) *For purposes of venue under this chapter,* a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Judicial Improvements and Access to Justice Act, Pub. L. No. 100–702, tit. X, § 1013(a), 102

Stat. 4642, 4669 (1988) (emphasis added).

In *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir.

1990), the Federal Circuit held that amendments to § 1391(c) regarding the applicability of

§ 1391(c)—namely, the 1988 revision that stated it applied "[f]or purposes of venue under this

chapter— "redefine[d] the meaning of the term 'resides' in" § 1400(b).  *Id.*  In making this

4

decision, the Federal Circuit considered the Supreme Court's decision in *Fourco*, and whether

Congress, in enacting the 1988 amendments, intended § 1400(b) to be interpreted differently:

> The Supreme Court's decision in *Fourco* is generally viewed as holding that § 1400(b) is the 'exclusive' venue statute in patent infringement actions. Thus it is sometimes said that, since *Fourco*, the only way to change the way that venue in patent infringement actions is determined is to change § 1400(b). This argument fails, however, because the Supreme Court, in *Brunette*, 406 U.S. 706, 92 S.Ct. 1936 [1972], refused to impose such a disablement upon the Congress' ability to enact or amend legislation. The issue in *Brunette* was whether § 1400(b) governed venue in a patent suit involving a foreign corporation, or whether the general venue provision applicable to aliens, 28 U.S.C. § 1391(d), governed. The Court held § 1391(d) applied, and that § 1400(b) was supplemented by the provision governing suits against aliens. *Fourco* and *Stonite* were distinguished.
>
> The specific question in *Fourco* was whether the statutory language previously enacted by the Congress as § 1391(c) supported a conclusion that Congress intended to have §§ 1391(c) and 1400(b) read together. On the basis of the nonspecific language of § 1391(c) and prior history as the Court read it, the Court concluded the answer was no.
>
> Section 1391(c) as it was in *Fourco* is no longer. We now have exact and classic language of incorporation: "For purposes of venue under this chapter . . . ." Congress could readily have added "except for section 1400(b)," if that exception, which we can presume was well known to the Congress, was intended to be maintained. Certainly it would not be sensible to require Congress to say, "For purposes of this chapter, *and we mean everything in this chapter . . .* ," in order to ensure that it has covered everything in a chapter of the statutes.
>
> The issue, then, is not whether the prior cases, including Supreme Court cases, determined that under different statutory language Congress' intent was that § 1400(b) stood alone. *The issue is, what, as a matter of first impression, should we conclude the Congress now intends by this new language in the venue act.*

*Id.* at 1579 (second emphasis added).

The Federal Circuit concluded that the plain meaning of the statute, coupled with the lack

of any evidence of Congress's intent to the contrary and the Supreme Court's holding in *Brunette*

*Mach. Works, Ltd. V. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972),[2] indicated that Congress

intended § 1400(b) and § 1391(c) to be read together.  Thus, since the Federal Circuit decided

---

[2] In *Brunette*, the Supreme Court expressly distinguished *Fourco* and *Stonite*, holding that § 1400(b) was supplemented by § 1391(d), the general venue provision applicable to aliens, in patent suits involving a foreign corporation.  406 U.S. at 714.

*VE Holding* in 1990, "the first test for venue under § 1400(b) with respect to a defendant that is a

corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject

to personal jurisdiction in the district of suit at the time the action was commenced." *Id.* at 1584.

The general venue statute, § 1391, was again amended in 2011. Section 1391 now

provides:

> (a) Applicability of section.—Except as otherwise provided by law—
>> (1) this section shall govern the venue of *all civil actions* brought in district
>> courts of the United States; and
> . . .
> (c) Residency.—*For all venue purposes*—
>> . . .
>> (2) an entity with the capacity to sue and be sued in its common name under
>> applicable law, whether or not incorporated, shall be deemed to reside, if a
>> defendant, in any judicial district in which such defendant is subject to the
>> court's personal jurisdiction with respect to the civil action in question and,
>> if a plaintiff, only in the judicial district in which it maintains its principal
>> place of business;

28 U.S.C. § 1391(a), (c)–(d) (emphasis added).

After these amendments, the Federal Circuit reaffirmed the validity of *VE Holding* in *In

re TC Heartland LLC*, 821 F.3d 1338 (Fed. Cir. 2016), *rev'd sub nom. TC Heartland LLC v.

Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017).

In *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), the

Supreme Court reversed the Federal Circuit's decision in *VE Holding*:

> In *Fourco*, this Court definitively and unambiguously held that the word
> "reside[nce]" in § 1400(b) has a particular meaning as applied to domestic
> corporations: It refers only to the State of incorporation. Congress has not amended
> § 1400(b) since *Fourco*, and neither party asks us to reconsider our holding in that
> case. Accordingly, the only question we must answer is whether Congress changed
> the meaning of § 1400(b) when it amended § 1391. When Congress intends to
> effect a change of that kind, it ordinarily provides a relatively clear indication of its
> intent in the text of the amended provision. The current version of § 1391 does not
> contain any indication that Congress intended to alter the meaning of § 1400(b) as
> interpreted in *Fourco*.

*Id.* at 1520 (citations omitted).

Thus, post-*TC Heartland*, venue is proper in the case of a corporate patent defendant,

where (a) the corporation is incorporated, or (b) the defendant has committed acts of

infringement and has a regular and established place of business.

### 3. Discussion

Nintendo argues that under *TC Heartland*, venue is improper in the Northern District of

Texas because (a) Nintendo is incorporated in Washington, and (b) Nintendo lacks a regular and

established place of business in the Northern District of Texas.   The Federal Circuit has held that

the test to determine whether a defendant has a "regular and established business" is "whether

the corporate defendant does its business in that district through a permanent and continuous

presence there," and is not a question of whether it has a "fixed physical presence in the sense of

a formal office or store."  *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).   Nintendo

argues that it does not operate an office in Texas, employ anyone in Texas, or maintain any

offices in Texas.[3]  Nintendo also contends that iLife has not alleged any facts supporting that

Nintendo has a "regular and established business" in Texas, and that it is the plaintiff's burden to

do so.  *See Med. Designs, Inc. v. Orthopedic Tech., Inc.*, 684 F. Supp. 445, 446 (N.D. Tex. 1988)

("[T]he plaintiff bears the burden of proving both acts of infringement and a regular place of

business in order to establish proper venue.").   Nintendo maintains that if this case were filed

today, venue in the Northern District would be improper under *TC Heartland*.   Nintendo further

argues that *TC Heartland* has retroactive effect on pending cases.

iLife argues that Nintendo affirmatively admitted that venue was proper in its Answer

and Amended Answer, and by failing to make a "timely and sufficient" objection to venue,

Nintendo waived its venue defense.   It did not file a Rule 12 motion in this case, and as stated

---

[3] For support, Nintendo cites to the declaration of Richard Medway, Nintendo's Vice President and Deputy General Counsel, which was provided as an exhibit to Nintendo's Earlier Motion to Transfer.  ECF No. 11-2 at APP.166.

above, in its Answer and Amended Answer, it "admit[ed] that venue is proper in this District

pursuant to 28 U.S.C. §§ 1391 and 1400(b)."  However, Nintendo maintains that it did not waive

improper venue, because before the *TC Heartland* decision was issued, the defense of improper

venue was not available, due to the Federal Circuit precedent of *VE Holding*.  For support,

Nintendo cites to various cases recognizing that a change in controlling law—or an "intervening

change in law"—can permit parties to assert previously unraised grounds.

　　　iLife makes two main arguments in response to Nintendo's contention that *TC Heartland*

is new intervening law that permits Nintendo to raise a venue challenge at this late stage.  First,

iLife argues that the decision in *TC Heartland* did not qualify as a change in law.  Second, iLife

argues the Fifth Circuit does not recognize an intervening change of law doctrine so as to

overcome Nintendo's venue waiver under Rule 12.  For the reasons below, the Court concludes

that *TC Heartland* does not qualify as an intervening change in law, and accordingly, does not

reach whether the Fifth Circuit recognizes an exception to waiver in circumstances such as these.

　　　iLife argues that "[t]he Supreme Court plainly stated that its decision in *TC Heartland*

was not a change of law, and that its decision in *Fourco* interpreting § 1400(b) has been good

law for the past 60 years."  In making its argument that *TC Heartland* did not create "new law,"

iLife relies on the opinions of two Courts that have considered venue transfer post-*TC

Heartland*: Senior Judge Harry Coke Morgan, Jr., in the Eastern District of Virginia in *Cobalt

Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21, 2017 WL 2556679 (E.D. Va. June 7, 2017),

and Magistrate Judge Payne in the Eastern District of Texas in *Elbit Systems Land v. Hughes

Network Systems, LLC*, No. 2:15-CV-00037, 2017 WL 2651618, at *18 (E.D. Tex. June 20,

2017).  In *Cobalt Boats*, the defendant moved to transfer under *TC Heartland* and asserts

virtually the same arguments Nintendo does here, namely that *TC Heartland* qualified as

intervening new law permitting it to reassert an otherwise waived venue challenge.  Judge Henry

Morgan disagreed, and held instead that *TC Heartland* did not create new law:

> Based on the Supreme Court's holding in TC Heartland, *Fourco* has continued to
> be binding law since it was decided in 1957, and thus, it has been available to every
> defendant since 1957. Accordingly, the Court FINDS that *TC Heartland* does not
> qualify for the intervening law exception to waiver because it merely affirms the
> viability of *Fourco*. Defendant Brunswick's assumption that *Fourco* was no longer
> good law was reasonable but wrong, and it cannot be excused from its waiver by
> saying there was a change in the law.

*Cobalt Boats*, 2017 WL 2556679, at *3.

Similarly, in *Elbit Systems*, Magistrate Judge Payne held that *TC Heartland* did not

qualify as an intervening change in law, noting that "[w]hile the Federal Circuit's decision in *VE

Holding* was inconsistent with *Fourco*, the Federal Circuit cannot overturn Supreme Court

precedent."  2017 WL 2651618, at *20.

During oral argument on the Motion to Transfer, Nintendo's counsel argued that in *VE

Holding*, the Federal Circuit did not overrule the Supreme Court's *Fourco* decision, but instead

held that Congress had amended the general venue statute in such a way that abrogated the effect

of *Fourco*.  Nintendo argues that *VE Holding* addressed a different question than *Fourco* and

*Stonite*—namely, whether Congress intended the 1988 amendments to § 1391(c) to supplement §

1400(b)—and thus, until the Supreme Court in *TC Heartland* reaffirmed the validity of *Fourco*,

the Federal Circuit's decision in *VE Holding* was the definitive authority on the relationship

between § 1400(b) and § 1391(c), as amended in 1988 and 2011.  *See In re TC Heartland*, 821

F.3d at 1342 ("In *VE Holding*, we found that the Supreme Court's decision in *Fourco* with

regard to the appropriate definition of corporate residence for patent cases in the absence of an

applicable statute to be no longer the law because in the 1988 amendments Congress had made

the definition of corporate residence applicable to patent cases.").  Nintendo's argument thus

appears to be that following the decision in *VE Holding* in 1990 up until the Supreme Court

decided *TC Heartland* in May of 2017, the highest authority available had deemed *Fourco* overridden by congressional action, and accordingly the Supreme Court's reaffirming of *Fourco* constituted a change of law.

"In the domain of statutory interpretation, Congress is the master," and "obviously has the power to correct [the Supreme Court's] mistakes." *W. Va. Uni. Hosp., Inc. v. Casey*, 499 U.S. 83, 113 (1991) (Stevens, J., dissenting), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166 § 113, 105 Stat. 1072, *as recognized in Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994). However, absent clear legislative history, identifying when Congress acts to undo Supreme Court action is far from simple.[4] Similarly, the effect of congressional action in abrogating Supreme Court precedent is unclear, especially when the intent of Congress is not divulged.

It is clear that the Supreme Court has the final authority on statutory interpretation and the continuing validity of its decisions. In the context of overrides, the Supreme Court has expressly acknowledged when it deems congressional enactments to have overridden an earlier decision. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 557 (2005) ("In *Finley* we emphasized that '[w]hatever we say regarding the scope of jurisdiction conferred by a particular statute can of course be changed by Congress.' In 1990, Congress accepted the invitation. It passed the Judicial Improvements Act, which enacted § 1367, the provision which

---

[4] Numerous academics have devoted substantial efforts to identifying congressional overrides, with varying methodologies and criteria for what qualifies as an override. *See, e.g.*, Matthew R. Christiansen & William N. Eskridge, Jr., *Congressional Overrides of Supreme Court Statutory Interpretation Decisions, 1967–2011*, 92 Tex. L. Rev. 1317, 1325 (2014); William N. Eskridge, Jr., *Overriding Supreme Court Statutory Interpretation Decisions*, 101 Yale L.J. 331, 332 n.1 (1991) ("This Article will use the term "override" to mean any time Congress reacts consciously to, and modifies a statutory interpretation decision. . . . With only a few exceptions, this Article will not use the term "override" to include statutes for which the legislative history—mainly committee reports and hearings—does not reveal a legislative focus on judicial decisions."); *see also* James Buatti & Richard L. Hasen, *Conscious Congressional Overriding of the Supreme Court, Gridlock, and Partisan Politics*, 93 Tex. L. Rev. See Also 263, 264 (2015) (discussing the significance of considering both conscious and inadvertent congressional overrides).

controls these cases." (citations omitted)); *Landgraf*, 511 U.S. at 251 ("Other sections of the

[Civil Rights Act of 1991] were obviously drafted with 'recent decisions of the Supreme Court'

in mind.").  What is unclear, however, is the extent to which a lower court, such as the Federal

Circuit, has the authority to deem a Supreme Court decision overridden by an act of Congress.  It

is particularly unclear when the congressional act in question, such as the one reviewed by the

Federal Circuit in *VE Holding*, contains no reference to the Supreme Court decision allegedly

being overridden, or even the statute at issue.  *See VE Holding*, 917 F.2d at 1580–81 ("While the

legislative history reveals that a purpose of the amendment is to define venue of corporate

defendants and to prescribe the venue determination in multidistrict states, it does not speak to

how or whether this amendment is intended to affect § 1400(b), or for that matter other sections

of chapter 87.").

The Court concludes, therefore, except where congressional abrogation of a Supreme

Court decision is express, "only [the Supreme] Court may overrule one of its precedents"—

whether through its own opinion or recognition of congressional override—and until that occurs,

*Fourco* is and still was the law.  *See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460

U.S. 533, 533 (1983) (per curiam).  In *VE Holding*, the Federal Circuit clearly thought that

Congress had implicitly overridden *Fourco* by statutory amendment.  However, until the

Supreme Court considered the question, *Fourco* remained the law.  The intervening twenty-

seven years may have created reliance on *VE Holding* by litigants, including Nintendo, but that

"does not change the harsh reality" that a party could have "ultimately succeeded in convincing

the Supreme Court to reaffirm *Fourco*, just as the petitioner in *TC Heartland* did."  *Elbit*

*Systems*, 2017 WL 2651618, at *20.

For the foregoing reasons, the Court concludes that *TC Heartland* does not qualify as an intervening change in law.  Accordingly, the Court does not reach the issue of whether Nintendo may raise a previously waived challenge to improper venue on the basis of *TC Heartland*. Nintendo's Motion to Transfer is **DENIED.**

**SO ORDERED.**

June 27, 2017.

BARBARA M. G. LYNN
CHIEF JUDGE

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ILIFE TECHNOLOGIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:13-cv-04987-M** |
| | § | |
| **NINTENDO OF AMERICA INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**ILIFE'S RESPONSE TO NINTENDO OF AMERICA'S MOTION TO DISMISS OR**
**TRANSFER FOR IMPROPER VENUE UNDER 28 U.S.C. § 1406(a)**

Michael C. Wilson
mwilson@munckwilson.com
Texas Bar No. 21704590
S. Wallace Dunwoody
wdunwoody@munckwilson.com
Texas Bar No. 24040838
Jacob LaCombe
jlacombe@munckwilson.com
Texas Bar No. 24070098
Jordan C. Strauss
jstrauss@munckwilson.com
Texas Bar No. 24088480

**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, Texas 75251
Telephone: (972) 628-3600
Facsimile: (972) 628-3616

**ATTORNEYS FOR PLAINTIFF**
**iLIFE TECHNOLOGIES, INC.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.   INTRODUCTION ............................................................................... 1

II.  PROCEDURAL BACKGROUND................................................................ 2

    A.   Nintendo has waived any venue objection and admitted that venue was proper. ........................................................................................ 2

    B.   Nintendo has litigated this case without raising the issue of venue........................ 3

III. ARGUMENTS AND AUTHORITIES................................................................ 5

    A.   Nintendo has waived its challenge to venue. .......................................... 5

        1.   Legal standards under Rule 12 and 28 U.S.C. § 1406. ............................. 5

        2.   Nintendo waived venue by admitting that venue is proper and failing to raise it by a Rule 12 motion..................................... 6

        3.   Nintendo waived its venue defense by actively litigating this case for over three years without pursuing a venue defense............................. 7

    B.   *TC Heartland* does not undo Nintendo's waiver. ..................................... 8

        1.   The Fifth Circuit does not recognize the intervening change in law exception. ................................................................... 8

        2.   *TC Heartland* did not change the law but reaffirmed the 60-year old precedent established in *Fourco*. ....................................... 10

        3.   Nintendo's cases do not excuse a waiver where, as here, the defendant expressly admitted that venue is proper. ................................. 13

    C.   Section 1406(b) precludes Nintendo's untimely venue motion........................... 15

IV.  CONCLUSION................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aisner v. Penn Mut. Life Ins. Co.*,
   53 F.3d 1282 (5th Cir. 1995) ................................................7

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
   No. 2:15-CV-21, Slip Op. (E.D. Va. June 7, 2017) ........................................2, 7, 12

*Conn Credit I, LP v. TF LoanCo III, LLC*,
   No. 1:14-CV-00429, 2015 WL 13036678 (E.D. Tex. Mar. 11, 2015) ....................................6

*Continental Bank v. Meyer*,
   10 F 3d 1293 (7th Cir. 1993) ................................................7

*Curtis Pub. Co. v. Butts*,
   388 U.S. 130 (1967) ................................................14

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ................................................14

*DSC Commc'ns Corp. v. Next Level Commc'ns*,
   107 F.3d 322 (5th Cir. 1997) ................................................9

*Engel v. CBS, Inc.*,
   886 F. Supp. 728 (C.D. Cal. 1995) ................................................13

*Farley v. Cernak*,
   No. CV 15-5956, 2016 WL 162238 (E.D. Pa. Jan. 13, 2016) ...........................................6, 15

*Forshey v. Principi*,
   284 F.3d 1335 (Fed. Cir. 2002) ................................................9, 10

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
   353 U.S. 222 (1957) ................................................ *passim*

*Gellman v. Telular Corp.*,
   449 F. App'x 941 (Fed. Cir. 2011) ................................................8

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014) ................................................13, 14

*Hamilton v. Atlas Turner, Inc.*,
   197 F.3d 58 (2d Cir. 1999) ................................................7, 8

*Hoffman v. Blaski*,
    363 U.S. 335 (1960)....................................................................................5, 10

*Holzsager v. Valley Hosp.*,
    646 F.2d 792 (2d Cir. 1981).................................................................13

*Hunt v. Bankers Trust Co.*,
    799 F.2d 1060 (5th Cir. 1986) ...............................................................7

*Insiders Edge, Inc. v. Inst. Research Servs., Inc.*,
    No. 3:94-CV-0088-R, 2004 WL 2203246 (N.D. Tex. Sept. 30, 2004) ....................................6

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979)....................................................................................5, 10

*Martinez v. Texas Dept. of Criminal Justice*,
    300 F.3d 567 (5th Cir. 2002) .................................................................9, 10

*Nexon Am., Inc. v. Cornwall*,
    No. CV 12-160-GW, 2012 WL 12893775 (C.D. Cal. Sept. 18, 2012)....................................7

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009).................................................................8

*Nolasco v. United States*,
    358 F. Supp. 2d 224 (S.D.N.Y. 2004)..................................................................6, 15

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*,
    6 F. Supp. 2d 203 (S.D.N.Y. 1998) ..................................................................6, 15

*Sanders v. Johnson*,
    No. CIV.A. H-04-881, 2005 WL 2346953 (S.D. Tex. Sept. 26, 2005)....................................6

*In re Sea Ray Boats, Inc.*,
    Case No 2017-124, Order Denying Mandamus (Fed. Cir. June 9, 2017)...............................12

*Smith v. Saetre*,
    No. 5:12-CV-228-C, 2013 WL 12124600 (N.D. Tex. Feb. 12, 2013) ....................................7

*Strauss v. Crédit Lyonnais, S.A.*,
    175 F. Supp. 3d 3 (E.D.N.Y. 2016) .............................................................13, 14

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    No. 16-341, 2017 WL 2216934 (U.S. May 22, 2017)................................................... *passim*

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
    No. 6:11-CV-455, 2014 WL 4477400 (E.D. Tex. Feb. 27, 2014)..........................................16

*Thomas v. United States*,
  267 F.2d 1 (5th Cir. 1959) ...............................................................................14

*Thurston Motor Lines. Inc. v. Jordan K. Rand, Ltd.*,
  460 U.S. 533 (1983) .........................................................................................11

*United States v. McCrimmon,*
  443 F.3d 454, 463 n 44 (5th Cir. 2006) ...........................................................10

*Weiss v. Nat'l Westminster Bank PLC*,
  176 F. Supp. 3d 264 (E.D.N.Y. 2016) ........................................................13, 14

*Wordtech Sys. Inc. v. Integrated Network Sol. Corp.*,
  No. 04-cv-1971, 2014 WL 2987662 (E.D. Cal. Jul. 1, 2014) ...............................7

*Young Again Prods., Inc. v. Acord*,
  459 F. App'x 294 (4th Cir. 2011) .......................................................................7

**Statutes**

28 U.S.C. § 1391 ..............................................................................1, 2, 3, 13

28 U.S.C. § 1400 ..............................................................................1, 2, 3, 11

28 U.S.C. § 1404 .....................................................................................1, 2, 3

28 U.S.C. § 1406 ....................................................................................... *passim*

28 U.S.C. § 2072 ....................................................................................10, 11

**Other Authorities**

Fᴇᴅ. R. Cɪᴠ. P. 1 ...............................................................................................16

Fᴇᴅ. R. Cɪᴠ. P. 12 .......................................................................................... *passim*

Fᴇᴅ. R. Cɪᴠ. P. 15 .........................................................................................5, 6

Plaintiff iLife Technologies, Inc. ("Plaintiff" or "iLife") files its response to Defendant Nintendo of America Inc.'s ("Defendant" or "Nintendo") Motion to Dismiss or Transfer for Improper Venue Under 28 U.S.C. § 1406(a) [Doc. 206], and shows:

## I.    INTRODUCTION

Three and a half years after *admitting* that venue is proper in this District,[1] and only two months before trial, Nintendo seeks to dismiss or transfer this case based on improper venue. Nintendo's motion contradicts the express waiver provisions of Rule 12(h)(1), relies on a purported "exception" to waiver that does not exist in the Federal Rules of Civil Procedure or the Fifth Circuit, and misconstrues the *TC Heartland* holding.  First, Nintendo has forfeited any right to object to venue by failing to raise it as required by Rule 12, admitting to proper venue in its pleadings, and engaging in extensive litigation in this Court over the past 42 months.  Second, the Fifth Circuit has not adopted any common law exception to waiver under Rule 12 based on intervening "new" law, and this Court should not create one now.  Third, even if such an exception existed, it does not apply here.  The Supreme Court plainly stated that its decision in *TC Heartland* was *not* a change of law, and that its decision in *Fourco* interpreting § 1400(b) has been good law for the past 60 years.[2]  On June 7, 2017, the Eastern District of Virginia rejected the same arguments Nintendo makes here, holding that the defendants waived their venue

---

[1] *See* Def.'s Answer & Countercls. [Doc. 7] at 2 ¶ 7 ("Defendant admits that venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant denies that the Northern District of Texas is a convenient venue for this dispute and reserves the right to transfer pursuant to 28 U.S.C. § 1404."); *see id.* at 8 ¶ 5 ("Nintendo reserves its rights with respect to venue, including its right to seek a change of venue to another district more convenient for the parties and witnesses pursuant to 28 U.S.C. § 1404. Subject to and without waiving these rights, this Court is a proper venue for these counterclaims pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b), and because iLife has voluntarily submitted to this Court's jurisdiction in this action.").

[2] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, No. 16-341, 2017 WL 2216934, at *3 (U.S. May 22, 2017); *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 226 (1957).

objections, and that *TC Heartland* did not change the law.[3]   Thus, nothing prevented Nintendo

years ago from pursuing the same objections to venue that prevailed in *TC Heartland*.   Finally,

even if Nintendo had preserved its venue objection, or could somehow undo its statutory waiver,

Nintendo cannot use § 1406(b) to deprive this Court of jurisdiction because Nintendo's motion is

untimely.   Indeed, Nintendo already has sought and caused substantial delays in this matter, the

case is substantially ready for trial, and transfer only would prejudice iLife and create substantial

judicial inefficiencies.   Nintendo's motion should be denied.

## II.    PROCEDURAL BACKGROUND

### A.  Nintendo has waived any venue objection and admitted that venue was proper.

1.   On April 28, 2014, Nintendo filed an answer and counterclaims in this action admitting

that venue is proper in this District: "Defendant **admits** that venue is proper in this District

pursuant to 28 U.S.C. §§ 1391 and 1400(b).   Defendant denies that the Northern District of

Texas is a convenient venue for this dispute and reserves the right to transfer pursuant to 28

U.S.C. § 1404."[4]   Prior to its pending motion, Nintendo never filed any pleading denying that

venue is proper in this District.[5]

2.   On April 29, 2014, Nintendo filed a motion to transfer venue to the Western District of

Washington under 28 U.S.C. § 1404(a).[6]   However, Nintendo never filed any motion under Rule

---

[3] *See* Ex. A-1, *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-CV-21, Slip Op. [Doc. 298] (E.D. Va. June 7, 2017) at APP. 012 (emphasis added).

[4] *See* Def.'s Answer & Countercls. [Doc. 7] at 2 ¶ 7 (emphasis added); *see id.* at 8 ¶ 5 ("Nintendo reserves its rights with respect to venue, including its right to seek a change of venue to another district more convenient for the parties and witnesses pursuant to 28 U.S.C. § 1404. Subject to and without waiving these rights, this Court is a proper venue for these counterclaims pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b), and because iLife has voluntarily submitted to this Court's jurisdiction in this action.").

[5] *See* Def.'s Answer & Countercls. [Doc. 7].

[6] *See* Def.'s Mot. to Transfer [Doc. 10]; 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

12, and Nintendo's motion to transfer venue did not assert that venue was improper in this

District.[7]

3.    On December 19, 2014, Nintendo filed an amended answer and amended counterclaims,

again admitting that venue is proper in this District.[8]

**B.  Nintendo has litigated this case without raising the issue of venue.**

4.    Nintendo has engaged in substantial litigation activities in this District during the past

three and a half years, including: (1) seeking affirmative relief of this Court by asserting

counterclaims for declaratory judgment of non-infringement, invalidity, and inequitable

conduct;[9]  (2) filing a motion to transfer venue under § 1404(a) and a motion to reconsider the

transfer motion;[10] (3) conducting extensive discovery, including taking and defending at least 13

depositions prior to filing this Motion;[11] (4) filing a motion to stay pending IPR institution, a

second motion to stay based on IPR institution, and an opposition to iLife's motion to lift the

stay following the PTAB's final written decisions in the IPR;[12] (5) engaging in multiple rounds

of claim construction briefing and arguing two claim construction hearings;[13] (6) designating and

---

[7] *See* Def.'s Mot. to Transfer [Doc. 10].

[8] *See* Def.'s Am. Answer & Countercls. [Doc. 61] at 2 ¶ 7 ("Defendant admits that venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant denies that the Northern District of Texas is a convenient venue for this dispute and reserves the right to transfer pursuant to 28 U.S.C. § 1404."); *see id.* at 9 ¶ 5 ("Nintendo reserves its rights with respect to venue, including its right to seek a change of venue to another district more convenient for the parties and witnesses pursuant to 28 U.S.C. § 1404. Subject to and without waiving these rights, this Court is a proper venue for these counterclaims pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b), and because iLife has voluntarily submitted to this Court's jurisdiction in this action.").

[9] *See* Def.'s Am. Answer & Countercls. [Doc. 61].

[10] *See* Def.'s Mot. to Transfer [Doc. 10]; Def.'s Mot. to Reconsider Mot. to Transfer [Doc. 29].

[11] *See* Decl. of M. Wilson at APP. 003.

[12] *See* Def.'s Mot. to Stay Pending Institution of IPRs [Doc. 46]; Def.'s Mot. to Stay Based on IPR Institution [Doc. 86]; Def.'s Opp. to iLife's Mot. to Lift Stay [Doc. 99].

[13] *See* Def.'s Opening Claim Constr. Br. [Doc. 49]; Def.'s Resp. Claim Constr. Br. [Doc. 56]; Minute Entry [Doc. 73]; Def.'s Supp. Claim Constr. Br. [Doc. 115]; Def.'s Resp. to iLife's Supp. Claim Constr. Br. [Doc. 118]; Minute Entry [Doc. 123].

serving four expert reports;[14] (7) filing a motion to strike and exclude allegedly undisclosed damages evidence, theories, and opinions of iLife's experts;[15] and (8) opposing iLife's summary judgment motion.[16]

5.    This Court has already invested substantial judicial resources in this case, including: (1) hearing Nintendo's motion to transfer and issuing orders denying it and Nintendo's motion to reconsider;[17] (2) conducting two claim construction hearings;[18] (3) issuing a lengthy claim construction order;[19] (4) ruling on two motions to stay and a motion to lift the stay following the IPRs;[20] and (5) considering numerous motions to strike and a summary judgment motion, and issuing a 51-page memorandum opinion addressing the scope of infringement and invalidity contentions and IPR estoppel.[21]

6.    On May 30, 2017, Nintendo filed its Motion to Dismiss or Transfer under § 1406(a) asserting for the *first time* that venue is improper in this District.[22]

---

[14] *See* Def.'s Expert Witness Designations [Doc. 148]; Def.'s Rebuttal Expert Witness Designations [Doc. 204].

[15] *See* Def.'s Mot. to Strike & Exclude Undisclosed Damages Evidence, Theories & Opinions [Doc. 157].

[16] *See* Def.'s Resp. to iLife's Mot. for Partial Summ. J. on Prior Art Invalidity Defenses [Doc. 167].

[17] *See* Minute Entry [Doc. 27]; Mem. Op. & Order [Doc. 37].

[18] *See* Minute Entry [Doc. 73]; Minute Entry [Doc. 123].

[19] *See* Order [Doc. 142].

[20] *See* Order Denying Stay [Doc. 65]; Order Granting Stay [Doc. 91]; Order Lifting Stay [Doc. 101].

[21] *See* Order [Doc. 198]; Mem. Op. & Order [Doc. 209].

[22] *See* Nintendo's Mot. to Dismiss or Transfer [Doc. 206].

## III.    ARGUMENTS AND AUTHORITIES

### A.  Nintendo has waived its challenge to venue.[23]

#### 1.  Legal standards under Rule 12 and 28 U.S.C. § 1406.

Venue is a waivable personal privilege of a defendant that must be raised at the inception of the case.[24]  Federal Rule of Civil Procedure 12(h) is entitled "Waiving and Preserving Certain Defenses."[25]  Under Federal Rule of Civil Procedure Rule 12(h)(1)(B), a defendant waives a Rule 12(b)(3) venue defense by failing to raise it in a Rule 12 motion or failing to "include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."[26]  Rule 12 does not provide any exception to such waiver for defenses under Rule 12(b)(2)–(5).[27]  Thus, following the expiration of the 21-day period for amendment of pleadings under Rule 15(a)(1), a party waives any venue objection.[28]  Citing 28 U.S.C. § 1406(a), Nintendo argues that this case should be transferred or dismissed.  But Nintendo overlooks subsection (b) of § 1406, which itself incorporates Rules 12's preservation and waiver provisions, stating that a party that fails to make a "timely and sufficient objection to the venue" waives the ability to challenge venue in that district:

> (b) *Nothing in this chapter shall impair the jurisdiction of a district court* of any matter involving a party who *does not interpose timely and sufficient objection to the venue.*[29]

---

[23] As an initial matter, iLife contends that the Court need not address the retroactivity of *TC Heartland* because (1) as discussed below, the Supreme Court in *TC Heartland* did not change the law; and (2) Nintendo has waived its venue objection.

[24] *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("venue, like jurisdiction over the person, may be waived.  A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it.").

[25] *See* Fed. R. Civ. P. 12(h).

[26] *See* Fed. R. Civ. P. 12(h)(1)(B)(ii); Fed. R. Civ. P. 15.  Nintendo did not file a Rule 12 motion.  *See* Fed. R. Civ. P. 12(h)(1).

[27] *See* Fed. R. Civ. P. 12; Fed. R. Civ. P. 15.

[28] Fed. R. Civ. P. 12(h)(1)(B)(ii); Fed. R. Civ. P. 15; 28 U.S.C. § 1406(b).

[29] *See* 28 U.S.C. § 1406(b) (emphasis added).

Further, a court has broad discretion in deciding motions brought under § 1406.[30]

## 2. Nintendo waived venue by admitting that venue is proper and failing to raise it by a Rule 12 motion.

Nintendo elected not to file any motion to dismiss under Rule 12(b)(3) for improper venue. To the contrary, Nintendo's live answer expressly admits that venue is proper in this District.[31] Nintendo never amended its answer as a matter of course under Rule 15 to raise its venue objection; thus, Nintendo waived any defense of improper venue.[32] The Advisory Committee Notes to Rule 12 confirm the rule's plain language that a party who fails to preserve its venue objection cannot later amend its answer to assert such objection:

> By amended subdivision (h)(1)(B), the specified defenses, even if not waived by the operation of (A), are waived by the failure to raise them by a motion under Rule 12 or in the responsive pleading or any amendment thereof to which the party is entitled as a matter of course. The specified defenses are of such a character that they should not be delayed and brought up for the first time by means of an application to the court to amend the responsive pleading. Since the language of the subdivisions is made clear, the party is put on fair notice of the

---

[30] *See, e.g., Farley v. Cernak*, No. CV 15-5956, 2016 WL 162238, at *3 (E.D. Pa. Jan. 13, 2016) ("given that Defendants' waiver *makes this improper venue into a proper venue*, it would be inappropriate for the Court to transfer this case pursuant to 28 U.S.C. § 1406(a)") (emphasis added); *see also Nolasco v. United States*, 358 F. Supp. 2d 224, 234 n. 16 (S.D.N.Y. 2004) (citing § 1406(b) and holding that "[a]lthough the *Braden* factors indicate that the Southern District of New York was *never* the proper venue for this case, the Government did not raise an objection based on improper venue and has therefore waived that argument.") (emphasis added); *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 207 (S.D.N.Y. 1998) (denying motion to transfer under § 1406, stating that "[o]nce objections to venue are waived, any defect in venue is cured, and the benefits of a § 1406(a) transfer for lack of venue are no longer available").

[31] *See* Def.'s Am. Ans. & Countercl. [Doc. 61] at 2, ¶ 7; *see id.* at 9 ¶ 5.

[32] *See* Fed. R. Civ. P. 12(h)(1)(B)(ii); Fed. R. Civ. P. 15(a)(1); *see* Def.'s Answer & Countercls. [Doc. 7]; Def.'s Am. Answer & Countercls. [Doc. 61]; *Insiders Edge, Inc. v. Inst. Research Servs., Inc.*, No. 3:94-CV-0088-R, 2004 WL 2203246, at *9 (N.D. Tex. Sept. 30, 2004) ("IRS waived any venue objection by being the party first to raise issues with respect to the 1989 Agreement in its First Counterclaim filed in January 1994."); *Conn Credit I, LP v. TF LoanCo III, LLC*, No. 1:14-CV-00429, 2015 WL 13036678, at *3 (E.D. Tex. Mar. 11, 2015) ("TF LoanCo did not object to personal jurisdiction under 12(b)(2) in its answer, its 12(b)(3) challenge, or any other motion. It has therefore waived this defense"); *Sanders v. Johnson,* No. CIV.A. H-04-881, 2005 WL 2346953, at *1 (S.D. Tex. Sept. 26, 2005) ("Because Defendant neither filed a Rule 12(b) motion challenging venue in this District nor challenged venue in his Answer, his defense of improper venue is waived.").

effect of his actions and omissions and can guard himself against unintended waiver.[33]

Courts routinely find waiver based on a defendant's admission of proper venue in its answer or the defendant's failure to object to venue.[34] By failing to make a "timely and sufficient" objection to venue—and instead affirmatively stating that venue is proper in its answer—Nintendo has permanently waived its venue defense.[35] Nintendo is bound by its judicial admission to venue in this District. Nintendo's motion never addresses that the Rules do not provide any basis for "taking back" its statutory waiver.

### 3. Nintendo waived its venue defense by actively litigating this case for over three years without pursuing a venue defense.

Even if Nintendo had properly and timely preserved its venue defense, Nintendo waived any objection by its conduct in this lawsuit and by failing to diligently pursue a venue defense.[36]

---

[33] Advisory Comm. Note to FED. R. CIV. P. 12.

[34] *See* Ex. A-1, *Cobalt Boats, LLC v. Sea Ray Boats, Inc*., No. 2:15-CV-21, Slip Op. [Doc. 298] (E.D. Va. June 7, 2017) at APP. 011-012; *Aisner v. Penn Mut. Life Ins. Co.*, 53 F.3d 1282 at * 1 n. 2 (5th Cir. 1995) (citing FED. R. CIV. P. 12(h)(1) and holding that "[a]fter failing to make a timely objection to venue in district court, Shields argues on appeal that venue was not proper in the Eastern District of Texas. Shields has waived his improper venue claim and may not assert such a claim before this Court."); *Smith v. Saetre*, No. 5:12-CV-228-C, 2013 WL 12124600, at *1 (N.D. Tex. Feb. 12, 2013) (citing FED. R. CIV. P. 12(h) and holding that "[b]y failing to timely raise a venue challenge, Defendants waived their right to make a motion to dismiss for improper venue."); *Nexon Am., Inc. v. Cornwall,* No. CV 12-160-GW (FFMX), 2012 WL 12893775, at *3 (C.D. Cal. Sept. 18, 2012) ("Defendant Crane waived venue because his Answer admits that venue is proper in this District."); *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 306 (4th Cir. 2011) ("Ortega waived her objection to the venue when she admitted venue was proper in her answer to Young Again's amended complaint and thereby failed to object to venue").

[35] FED. R. CIV. P. 12(h)(1)(B); 28 U.S.C. § 1406(b).

[36] *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1068 (5th Cir. 1986) ("venue is a privilege personal to a litigant, and, even when venue is laid in a court where it would otherwise be improper, it may be waived by express agreement or by conduct"); *see, e.g., Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61–62 (2d Cir. 1999) (finding waiver of Rule 12 personal jurisdiction defense because defendant participated in four years of active litigation after inclusion of defense in answer); *Continental Bank v. Meyer*, 10 F 3d 1293, 1296–1297 (7th Cir. 1993) (finding Rule 12 personal jurisdiction defense waived where defendants "participated in lengthy discovery, filed various motions and opposed a number of motions" and "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction"); *Wordtech Sys. Inc. v. Integrated Network Sol. Corp*., No. 04-cv-1971, 2014 WL 2987662, at *4 (E.D. Cal. Jul. 1, 2014) (finding venue waived where it was raised in answer but moved to dismiss for improper venue after eight years of active litigation).

In *Hamilton*, for example, the defendant participated in four years of litigation before moving to dismiss under Rule 12(b)(2).[37]  The Second Circuit concluded that "Atlas forfeited its defense of lack of personal jurisdiction by participating in extensive pretrial proceedings and forgoing numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in its answer."[38]

This case has been pending since December of 2013.  Since that time, Nintendo has actively engaged in litigation in this Court—including participating in all of the proceedings, discovery, claim construction hearings, and filings discussed above (Section II.B)—without ever objecting to venue.[39]  Such conduct and untimeliness also results in waiver of any venue defense.

## B.  *TC Heartland* does not undo Nintendo's waiver.

### 1.  The Fifth Circuit does not recognize the intervening change in law exception.

Despite the fact that Rule 12 does not provide for any exception to waiver, Nintendo argues that it did not waive its venue objection because *TC Heartland* changed the law. Nintendo cites certain decisions from other circuits adopting a limited exception to certain types of waiver based on an intervening change in the law.[40]  However, Fifth Circuit law applies to procedural issues, including venue, that are not unique to patent law.[41]  The Fifth Circuit has not

---

[37] *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999).

[38] *See id.* ("we note that the issue is more properly considered one of forfeiture than of waiver. The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate").

[39] *See supra* n. 36.

[40] *See* Def.'s Mot. to Dismiss or Transfer [Doc. 206] at 8.

[41] *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (reviewing denial of motion to transfer venue under Fifth Circuit law, reasoning that "because this petition does not involve substantive issues of patent law, this court applies the laws of the regional circuit in which the district court sits, in this case the United States Court of Appeals for the Fifth Circuit"); *Gellman v. Telular Corp.*, 449 F. App'x 941, 943 (Fed. Cir. 2011) ("A dismissal for lack of subject matter jurisdiction is a procedural

adopted any rule that would permit a party to reverse its prior admission or waiver of venue.  In *DSC Communications*, the only Fifth Circuit case that Nintendo cites, the court addressed whether the defendant was entitled to raise an issue in a supplemental brief despite defendant's failure to raise that issue in initial brief after oral argument.[42]  *DSC Communications* does not support setting aside an unequivocal statutory waiver under Rule 12.[43]  In any event, subsequent Fifth Circuit authority undermines the holding in *DSC Communications*.[44]  In *Martinez*, the Fifth Circuit held that Martinez waived her waiver-by-removal claim by raising it for the first time on appeal, and considered and *declined* to adopt the intervening change in law doctrine:

> With these approaches to guide our decision, **we see no sound reason to depart now from our long established course of refusing, absent extraordinary circumstances, to entertain legal issues raised for the first time on appeal**.[45]

Absent clear guidance from the Fifth Circuit providing for a common law exception to venue waiver under Rule 12(h)(1), this Court is bound to apply the rule according to its plain language.  Notwithstanding that Fifth Circuit law governs the venue analysis here, Nintendo also relies upon the Federal Circuit's decision in *Forshey* which concerned whether issues that were not raised before the Court of Appeals for Veterans Claims could be considered on appeal for the

---

question not unique to patent law, and so this court follows the law of the regional circuit, here the Fifth Circuit").

[42] *DSC Commc'ns Corp. v. Next Level Commc'ns*, 107 F.3d 322, 326 n. 2 (5th Cir. 1997) ("Next Level did not originally argue to this Court that Eames and Keeler could not be liable as they were not officers, directors or major shareholders in their original brief. Next Level did, however, raise the argument that Eames and Keeler were only high level employees who did not occupy positions as officers, directors or major shareholders in the district court. It did not originally argue this theory on appeal as support for its allegation Next Level did not divert a corporate opportunity because the issue has not been definitively decided in Texas state court, and the only federal case law specifically addressing this issue was the district court holding in *United Teachers* overruled on appeal by this Court's holding.").

[43] *See id.*

[44] *Martinez v. Texas Dept. of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).

[45] *Id.* at 574–75 (emphasis added).

first time.[46]    However, the holding in *Forshey* contradicts Nintendo's position because the Federal Circuit held that certain validity and burden of proof issues that were not raised below could not be raised on appeal.[47]    Further, the *Forshey* holding was considered and cited by the Fifth Circuit in *Martinez*, but the Fifth Circuit confirmed that Martinez waived her defense.[48]

Based on the plain language of Rule 12, a "waiver exception" does not exist.[49] Moreover, because of the nature of the defense and the timing of the objection, the Federal Rules recognize that venue is a procedural convenience, and is afforded less protection than other substantive rights.[50]    Thus, even if the Court were to consider application of an intervening law exception, forfeiture of a venue defense does not amount to "extraordinary circumstances" justifying retroactive application of such an exception.[51]

Nintendo has failed to cite any Supreme Court or Fifth Circuit authority applying an intervening change in law exception to the codified waiver provisions in Rule 12(h) and 28 U.S.C. § 1406.[52]    Absent such authority, this Court should not recognize an uncodified exception to Rules adopted by the Supreme Court.[53]

## 2. *TC Heartland* did not change the law but reaffirmed the 60-year old precedent established in *Fourco*.

Even if this Circuit recognized an intervening law exception, it does not apply here. Nintendo cites cases applying a narrow exception to waiver that permits a defendant to raise a

---

[46] *See Forshey v. Principi*, 284 F.3d 1335, 1355–58 (Fed. Cir. 2002).

[47] *See id.* at 1358.

[48] *See Martinez*, 300 F.3d at 574 (citing *Forshey*, 284 F.3d at 1355–58).

[49] FED. R. CIV. P. 12(h).

[50] *See* Advisory Comm. Note to FED. R. CIV. P. 12; *Leroy*, 443 U.S. at 180; *Blaski*, 363 U.S. at 343.

[51] *Martinez*, 300 F.3d at 574-75; *United States v. McCrimmon,* 443 F.3d 454, 463 n 44 (5th Cir. 2006) ("[p]rocedural default rules are not trumped by the retroactivity of later decided cases").

[52] *See* Nintendo's Mot. to Dismiss or Transfer [Doc. 206] at 8.

[53] *See* 28 U.S.C. § 2072.

defense that was legally unavailable to it, but subsequently becomes available due to an intervening *change* in the law.[54]   Nintendo's argument based on "unavailability" fails because *TC Heartland* did not change the law.[55]   Rather, the Supreme Court in *TC Heartland* reaffirmed the 60-year old precedent established in *Fourco*, in which "this Court *definitively and unambiguously* held that the word 'reside[nce]' in § 1400(b), as applied to domestic corporations, refers only to the State of incorporation."[56]   Section 1400 was never amended or supplanted, *Fourco* was never overruled, and the law never changed:

> Congress has not amended § 1400(b) since this Court construed it in *Fourco,* but it has amended § 1391 twice. Section 1391 now provides that, "[e]xcept as otherwise provided by law" and "[f]or all venue purposes," a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." §§ 1391(a), (c). The issue in this case is whether that definition supplants the definition announced in *Fourco* and allows a plaintiff to bring a patent infringement lawsuit against a corporation in any district in which the corporation is subject to personal jurisdiction. **We conclude that the amendments to § 1391 did not modify the meaning of § 1400(b) as interpreted by *Fourco*.** We therefore hold that a domestic corporation "resides" only in its State of incorporation for purposes of the patent venue statute.[57]

Indeed, the Federal Circuit in *VE Holding* had no authority to overrule binding Supreme Court precedent.[58]   Because *Fourco* has remained good law since 1957, Nintendo's arguments that "*TC Heartland* changed the law regarding the proper venue for patent infringement actions against domestic corporations" and that its venue objection previously was "unavailable" fail.[59]

---

[54] *See id.*

[55] *TC Heartland LLC*, 2017 WL 2216934, at *3.

[56] *Id.* at *2 (emphasis added).

[57] *Id.* at *3 (emphasis added).

[58] *See Thurston Motor Lines. Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) ("Needless to say, only this Court may overrule one of its precedents.").

[59] *See* Def.'s Mot. to Dismiss or Transfer [Doc. 206] at 6-7.

On June 7, 2017, the Eastern District of Virginia rejected the very arguments that Nintendo makes here, finding that the defendant waived venue by admitting venue in its answer, and that *TC Heartland* was not an intervening change in the law:

> The twenty-seven (27) year viability of *VE Holding* is certainly surprising in light of the Supreme Court's view on *Fourco*, but the circuit courts are only empowered to express the law of their circuit "[i]n the absence of a controlling decision by the Supreme Court. . . ." *See Hyatt v. Heckler*, 807 F.2d 376, 379 (4th Cir. 1986). The Supreme Court has never overruled *Fourco*, and the Federal Circuit cannot overrule binding Supreme Court precedent. *See Thurston Motor Lines. Inc. v. Jordan K. Rand, Ltd*., 460 U.S. 533, 535 (1983) ("Needless to say, only this Court may overrule one of its precedents.").

> Based on the Supreme Court's holding in *TC Heartland*, **Fourco has continued to be binding law since it was decided in 1957, and thus, it has been available to every defendant since 1957**. Accordingly, the Court FINDS that **TC Heartland does not qualify for the intervening law exception to waiver because it merely affirms the viability of *Fourco*. Defendant Brunswick's assumption that *Fourco* was no longer good law was reasonable but wrong, and it cannot be excused from its waiver by saying there was a change in the law**.[60]

Nintendo could have filed a motion to dismiss under Rule 12(b)(3) or denied proper venue in its answer just like the defendant did in *TC Heartland*.[61]  The success of TC Heartland's objection, and the fact that its objection relied on the 60-year-old *Fourco* decision, demonstrates that such objection was both meritorious and available to Nintendo.  On June 9, 2017, the Federal Circuit denied a petition for mandamus in *Cobalt Boats* because the petitioner could not show any clear abuse of discretion, usurpation of judicial power, or a clear and undisputable right to such relief.[62]

---

[60] *See* Ex. A-1, *Cobalt Boats, LLC v. Sea Ray Boats, Inc*., No. 2:15-CV-21, Slip Op. [Doc. 298] (E.D. Va. June 7, 2017) at APP. 012 (emphasis added).

[61] *See TC Heartland,* 2017 WL 2216934, at *3 (discussing procedural history); *see also* Ex. A-2, TC Heartland's Mot. to Dismiss at APP. 030-031.

[62] *See* Ex. A-5, *In re Sea Ray Boats, Inc.*, Case No 2017-124, Order Denying Mandamus (Fed. Cir. June 9, 2017) at APP. 141-42. *But see id.* at APP. 144-45 (Newman, J., dissenting).

**3. Nintendo's cases do not excuse a waiver where, as here, the defendant expressly admitted that venue is proper.**

Nintendo has cited no case where the defendant expressly admitted that venue was proper in its answer, and the Court nevertheless excused waiver due to an intervening change in the law. To the contrary, Nintendo relies on many cases in which the defendant had preserved its jurisdictional defense.[63]    In *Holzsager*, the court found that the defendant did not waive its jurisdictional challenge under a retroactive application of the Supreme Court's *Rush v. Savchuk* opinion because "[t]he plain language of the [defendant's] second affirmative defense, that the court 'lacked jurisdiction over the person of the defendant,' was literally broad enough to encompass lack of jurisdiction on the grounds later upheld by the Supreme Court in *Rush v. Savchuk*."[64]    In *Engel*, the court found no waiver where the "defendants attempted to preserve their venue challenge in their answer," and then intervening statutory amendments to the venue provision (28 U.S.C. § 1391(a)) during pendency of the case changed the proper venue from California to New York.[65]    The cases do not support Nintendo's request for such extraordinary relief where (a) Nintendo did not attempt to preserve its venue defense like the defendant in *Engel*, but instead expressly admitted venue was proper; and (b) there has been no statutory amendment to the venue provision at issue here, as made clear in *TC Heartland*.[66]

The remaining cases cited by Nintendo—*Gucci, Weiss,* and *Strauss*—also are distinguishable.   In *Gucci*, the issue before the Second Circuit was whether a non-party bank's appearance in the district court constituted a waiver of its objection to general jurisdiction—not

---

[63] *See, e.g., Holzsager v. Valley Hosp.,* 646 F.2d 792, 795–796 (2d Cir. 1981) (finding no waiver where the defendant broadly pleaded that court "lacked jurisdiction over the person of the defendant"); *Engel v. CBS, Inc.,* 886 F. Supp. 728, 730 (C.D. Cal. 1995) (finding no waiver where the "defendants attempted to preserve their venue challenge in their answer").

[64] *Holzsager v. Valley Hosp.,* 646 F.2d 792, 795–96 (2d Cir. 1981).

[65] *Engel,* 886 F. Supp. at 731–32.

[66] *TC Heartland LLC,* 2017 WL 2216934, at *3.

whether a defendant waives venue by expressly admitting venue in its answer.[67]   Further, the

*Gucci* opinion was based on the Supreme Court's holding in *Daimler*, in which "the Supreme

Court **for the first time addressed** the question whether, consistent with due process, 'a foreign

corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state

subsidiary.'"[68]   *TC Heartland* did not change the law, but merely reaffirmed its 60 year old

*Fourco* precedent.[69]   Both *Weiss* and *Strauss* depend on the Second Circuit's analysis in *Gucci*

(and ultimately the *Daimler* holding), and the defendants in *Weiss* and *Strauss* did not admit that

jurisdiction was proper in their answers.[70]

      Finally, *Curtis* did not involve waiver of a procedural issue like venue in which courts

routinely find waiver,[71] but the assertion of a first amendment constitutional right—"a freedom

which is the 'matrix, the indispensable condition, of nearly every other form of freedom.'"[72]   The

---

[67] *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135–36 (2d Cir. 2014).

[68] *Id.* at 134–35 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014)) (emphasis added); *Daimler*, 134 S. Ct. at 759 ("This Court has not yet addressed whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary.").

[69] *TC Heartland LLC*, 2017 WL 2216934, at *3 (emphasis added).

[70] *See* Ex. A-3, National Westminster Bank's Answer, at ¶2 APP. 036 (venue allegations include that defendant "denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint, except admits that plaintiffs purport to base jurisdiction on the statutory provisions cited therein"); *see* Ex. A-3, Credit Lyonnais's Answer, at ¶2 at APP. 036 (venue allegations include that defendant "denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint, except admits that plaintiffs purport to base jurisdiction on the statutory provisions cited therein"); *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 273–274 (E.D.N.Y. 2016) (holding that the defendant-bank did not waive its personal jurisdiction defense by omitting that defense from its prior motions to dismiss and then actively litigating the case); *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 13 (E.D.N.Y. 2016) (same).

[71] *Thomas v. United States*, 267 F.2d 1, 1–2 (5th Cir. 1959) ("The right claimed by defendant is a procedural one and may be waived, and the record is devoid of any objection on the trial on the ground of improper venue."); *see supra* n. 34.

[72] *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 142–43 (1967) (The issue was whether a defendant in a libel case whose trial occurred *before* the *New York Times* decision (announcing the rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice") waived his first amendment constitutional right pronounced in *New York Times* by failing to assert a general constitutional defense at trial) (internal citations omitted).

Advisory Committee Notes to Rule 12 further reinforce that a venue defense under 12(b)(3) is a less substantial defense that is subject to waiver unlike other "substantial" Rule 12 defenses.[73] For all of these reasons, Nintendo's Motion should be denied.

## C. Section 1406(b) precludes Nintendo's untimely venue motion.

Reinforcing the express waiver provisions in Rule 12, Section 1406(b) provides that a party that fails to make a "timely and sufficient objection to the venue" waives the ability to challenge the jurisdiction of the court *even if venue is improper*.[74]  Nintendo's motion comes 42 months after this case was filed. Transfer at this stage would only further delay this litigation after the parties and the Court have invested substantial time, effort, and resources during the three-year pendency of this case, including two claim construction hearings, a lengthy claim

---

[73] Advisory Comm. Note to Fed. R. Civ. P. 12 ("It is to be noted that while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted, failure to join a party indispensable under Rule 19, and failure to state a legal defense to a claim (see Rule 12(b)(6), (7), (f)), as well as the defense of lack of jurisdiction over the subject matter (see Rule 12(b)(1)), are expressly preserved against waiver by amended subdivision (h)(2) and (3).").

[74] 28 U.S.C. § 1406(a)-(b) (*nothing in this chapter shall impair the jurisdiction of a district court* of any matter involving a party who *does not interpose timely and sufficient objection to the venue*.) (emphasis added); *see, e.g., Farley*, 2016 WL 162238, at *2 ("From a preliminary review, it would appear that venue is improper in this district.  However, Defendants failed to raise this issue in their Motion to Dismiss. Defendants' Motion to Dismiss only raised the issue of the statute of limitations. To preserve a challenge regarding improper venue, a defendant must raise the issue in the responsive pleading. Fed. R. Civ. P. 12(b)(3). . . . If the responsive pleading does not challenge improper venue, the defense is waived. Fed. R. Civ. P. 12(h). Thus, where a defendant does not "interpose timely and sufficient objection to the venue," the district court retains jurisdiction, *even if the venue would otherwise be improper*. 28 U.S.C. § 1406(b). Defendants have not moved to dismiss or transfer this case due to improper venue. As such, Defendants have waived their objection to improper venue. . . . Likewise, given that Defendants' waiver *makes this improper venue into a proper venue*, it would be inappropriate for the Court to transfer this case pursuant to 28 U.S.C. § 1406(a)") (emphasis added); *Nolasco*, 358 F. Supp. 2d at 234 (citing § 1406(b) and holding that "[a]lthough the *Braden* factors indicate that the Southern District of New York was never the proper venue for this case, the Government did not raise an objection based on improper venue and has therefore waived this argument."); *Orb Factory, Ltd.*, 6 F. Supp. 2d at 207 (denying motion to transfer under § 1406, stating that "[o]nce objections to venue are waived, any defect in venue is cured, and the benefits of a § 1406(a) transfer for lack of venue are no longer available").

construction order, orders on motions to strike invalidity and infringement contentions, and a summary judgment order on IPR estoppel, among other things.[75]

iLife, as a patent owner, has a strong interest in timely enforcement of the '796 patent.[76] Nintendo has repeatedly attempted to delay this case through motions to stay, filing 6 IPRs, opposing iLife's motion to lift the stay following the IPRs, seeking a continuance of trial, and now raising its untimely venue objection.[77]   This case is set for trial in just 70 days.  iLife's lead inventor and principal is 84 years old and deserves his day in court without further delay.[78] Accordingly, Nintendo's motion is untimely under § 1406(b).[79]

### IV.   CONCLUSION

For the foregoing reasons, iLife requests that the Court deny Nintendo's Motion to Dismiss or Transfer, and all other relief to which it is entitled.

---

[75] *See supra* Section II.B.

[76] *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 WL 4477400, at *1 (E.D. Tex. Feb. 27, 2014) ("ThinkOptics has an interest in timely enforcing its patents.").

[77] *See* Def.'s Mot. to Stay Pending Institution of IPRs [Doc. 46]; Def.'s Mot. to Stay Based on IPR Institution [Doc. 86]; Def.'s Opposition to iLife's Mot. to Lift Stay [Doc. 99].

[78] *See* Pl.'s Resp. to Mot. to Stay [Doc. 89] at 8 (discussing prejudice); *see also* Decl. of Michael Lehrman [Doc. 63] at App. 3-4.

[79] *See* FED. R. CIV. P. 1 ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Dated: June 12, 2017                     Respectfully submitted,

                                         */s/ Michael C. Wilson*
                                         Michael C. Wilson
                                         mwilson@munckwilson.com
                                         Texas Bar No. 21704590
                                         S. Wallace Dunwoody
                                         wdunwoody@munckwilson.com
                                         Texas Bar No. 24040838
                                         Jacob LaCombe
                                         jlacombe@munckwilson.com
                                         Texas Bar No. 24070098
                                         Jordan C. Strauss
                                         jstrauss@munckwilson.com
                                         Texas Bar No. 24088480

                                         **MUNCK WILSON MANDALA, LLP**
                                         12770 Coit Road, Suite 600
                                         Dallas, Texas 75251
                                         Telephone: (972) 628-3600
                                         Facsimile: (972) 628-3616

                                         **ATTORNEYS FOR PLAINTIFF**
                                         **iLIFE TECHNOLOGIES, INC.**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all known counsel of record via CM/ECF, in accordance with the Federal Rules of Civil Procedure on June 12, 2017.

                                         */s/ Michael C. Wilson*
                                         Michael C. Wilson


731076.

17

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ILIFE TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 3:13-cv-04987 |
| v. | § | |
| | § | **Jury Trial Demanded** |
| NINTENDO OF AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

---

**DECLARATION OF RICHARD MEDWAY
IN SUPPORT OF MOTION TO TRANSFER**

I, Richard Medway, declare:

1.    I make this declaration on the basis of personal knowledge, and if called to testify as a witness, I would and could testify competently hereto.

2.    I am Vice President, Deputy General Counsel at Nintendo of America Inc. ("NOA"). I have been employed by NOA since 2006. I make this declaration in support of NOA's Motion to Transfer.

3.    NOA is a Washington (state) company with its principal place of business in Redmond, Washington. NOA is a wholly-owned subsidiary of Nintendo Co., Ltd. ("NCL", and, collectively with NOA, "Nintendo").

4.    NCL is a Japanese company with its headquarters in Kyoto, Japan. NCL employees in Japan develop Nintendo's video-game systems and peripherals, including the Wii and Wii U. NCL's design- and development- related documents are in Japan. NCL does not operate an office in Texas, employ anyone in Texas, or maintain any files in Texas.[1]

---

[1] NCL does have a subsidiary, Retro Studios, that is located in Austin, Texas. Retro is a game development studio that develops games for Nintendo video-game systems. Retro does not possess documents relevant to this action, or employ anyone with knowledge relevant to this action.

5.      NOA is responsible for marketing, selling, and distributing Nintendo products, including the Wii and Wii U, in the United States.  NOA has over 1200 employees, most of whom work in one of NOA's three facilities in Washington (Redmond, Kirkland, and North Bend).  The majority of NOA's employees work at NOA's Redmond, Washington headquarters.

6.      NOA's Redmond headquarters is the strategic center of NOA's business.  NOA's President and other executive team members are based in Redmond.  Most decisions relating to NOA's overall business strategy are made in Redmond, and key sales and marketing decisions about the sale of Nintendo's products in the United States also generally occur in Redmond. NOA keeps its corporate documents in Redmond.  In fact, most documents relevant to this case are located in Redmond, including documents relating to finance, designs for manuals and product packaging, licensing, contracts and agreements, advertising, and design and development of the accused products.

7.      The hardware and software of Nintendo's devices, including the Wii and Wii U, are proprietary.  The Wii and Wii U follow in a long line of innovative Nintendo electronic game products.  Documents and physical evidence concerning the design, development and operation of these products are located in Japan and Washington.

8.      NOA's largest marketing and sales office is in Redwood City, California.  More than 70 employees work in this office.  NOA's Redwood City office houses sales and marketing teams.  Most of NOA's sales and marketing materials are maintained in NOA's headquarters or its Redwood City office.  Employees who would be called to testify regarding sales and marketing would likely come from NOA's headquarters or NOA's Redwood City office.

2

APP. 000165

9.      NOA does not operate an office in Texas, employ anyone in Texas, or maintain

any documents in Texas.[2]  None of the accused products were developed or manufactured in this

District.

10.     NOA's potential witnesses in this case of whom I am aware include:

- ***Rod Teuber.*** Mr. Teuber is the Corporate Comptroller for NOA. Mr. Teuber coordinates
  NOA's financial reporting activities, assuring proper financial reporting and compliance
  with generally accepted accounting principles. Mr. Teuber has knowledge about sales and
  distribution of Nintendo's products in the United States, including such knowledge about
  the Wii and Wii U. Mr. Teuber works at NOA's Redmond headquarters.

- ***Steve Rabin.*** Mr. Rabin is a Principal Software Support Engineer for NOA. Mr. Rabin
  provides technical assistance to third-party software developers who are developing
  games for Nintendo's video-game systems. Mr. Rabin has technical knowledge regarding
  how Nintendo's systems (such as the Wii and Wii U) interact with some game software.
  Mr. Rabin works at NOA's Redmond headquarters.

- ***Nicholas Chavez.*** Mr. Chavez is the Director of Consumer Marketing for NOA. Mr.
  Chavez has knowledge of the sales and marketing efforts NOA undertakes in the United
  States to sell its products, including the Wii and Wii U. Mr. Chavez works in NOA's
  Redwood City office.

11.     Trial in the Western District of Washington would be much more convenient for

NOA employees than trial in Dallas, Texas.  NOA's headquarters in Redmond, Washington is

only about thirty minutes from the courthouse.  Moreover, trial in the Western District of

Washington would be more convenient for witnesses from NOA's Redwood City office.  These

witnesses could make day trips between Redwood City and the Western District of Washington,

and would not have to be away from their work or families for an extended period of time, as

they would be if trial takes place in Dallas.  Also, to the extent these witnesses had to travel to

the Western District of Washington for more than one day, they could use NOA's headquarters

in Redmond as a base of operations.  Thus, a trial in the Western District of Washington would

be less disruptive for their work schedules.  Traveling to Dallas would be much more

---

[2] NOA has a subsidiary, NES Merchandising, Inc. ("NMI"), that supports NOA's retail sales throughout the United States, including in Texas.  But NMI does not possess any documents relevant to this action, or employ anyone with knowledge relevant to this action.

APP. 000166

inconvenient because day trips to and from Dallas would be difficult, and NOA witnesses would not have a place to work if required to stay in Dallas for extended periods of time.

12.    For similar reasons, trial in the Northern District of California would also be more convenient for NOA employees than would trial in Dallas. The trial would be local for witnesses in NOA's Redwood City, California office. Meanwhile, witnesses from NOA's Redmond, Washington, headquarters would be able to take day trips to California and, if longer stays are required, to work from NOA's Redwood City offices.

13.    Potential witnesses in this case from NCL of whom I am aware include:

- *Akio Ikeda.* Mr. Ikeda is a Project Leader in Technology Research Group, Technology Research Department, Integrated Research & Development Division at NCL, and was the leader of the team that invented the Wii Remote. Mr. Ikeda has knowledge about the design and development of the Wii console and Wii Remote. Mr. Ikeda: resides in Japan.

- *Keizo Ota.* Mr. Ota is a Senior Software Specialist in Technology Group, EAD Technology Development Department, Entertainment Analysis & Development Division at NCL. Mr. Ota has knowledge regarding the design and development of the Wii Remote. Mr. Ota resides in Japan.

- *Kuniaki Ito.* Mr. Ito is a member of the Electrical Engineering Group, Product Development Department No. 2, Integrated Research & Development Division at NCL. Mr. Ito has knowledge about the design and development of the Wii U GamePad. Mr. Ito resides in Japan. (*Id.*, ¶ 13)

14.    Appearing for trial in either the Western District of Washington or the Northern District of California would be much more convenient for NCL employees than trial in Dallas, Texas. Air travel from Kyoto, Japan to Seattle or San Francisco is shorter and more convenient than travel to Dallas, Texas. Moreover, NCL witnesses from Japan could use NOA's headquarters in Redmond (or its offices in Redwood City) as a base of operations. Thus, their work schedule would not be disrupted as much by a trial in the Western District of Washington or the Northern District of California.

4

I declare under penalty of perjury that the foregoing is true and correct.  Executed April

25, 2014, at Redmond, Washington.


_____

Richard Medway

1

APP. 000168

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ILIFE TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 3:13-cv-04987 |
| v. | § | |
| | § | **Jury Trial Demanded** |
| NINTENDO OF AMERICA INC., | § | |
| | § | |
| Defendant. | § | |

---

**DEFENDANT NINTENDO OF AMERICA INC.'S
NOTICE REGARDING SCHEDULING ORDER**

Defendant Nintendo of America Inc. ("NOA") respectfully submits this notice regarding the scheduling order. Following this Court's Order dated May 9, 2017 (Dkt. 198) which addressed a number of motions filed by the parties, counsel for NOA and Plaintiff iLife Technologies, Inc. ("iLife") conferred regarding a potential modification of the procedural schedule. In light of the Order, NOA hereby notifies the Court that, at the telephonic conference scheduled for tomorrow, it will propose that the Court modify the current schedule, on the terms in the modified schedule attached as Ex. A to this Notice. iLife has informed NOA that it is prepared to complete expert discovery and pre-trial matters according to a modified schedule for the current trial setting in August, but if the Court were inclined to move the trial date, iLife has informed NOA that it does not object to the dates proposed by NOA, subject to confirmation of the Court's availability to conduct trial beginning on or about October 10, 2017, and modification of the responsive briefing schedule regarding summary judgment and *Daubert* motions to accommodate iLife's counsel's trial conflict in another case.

Dated: May 10, 2017

Respectfully submitted,


*/s/   Stephen Smith*
Thomas C. Wright
Texas State Bar No. 24028146
Alex J. Whitman
Texas State Bar No. 24081210
ROSE WALKER, LLP
3500 Maple Avenue, Suite 900
Dallas, TX 75219
Telephone: (214) 752-8600
Fax: (214) 752-8600
twright@rosewalker.com
awhitman@rosewalker.com


Of Counsel:

Stephen R. Smith (*Pro Hac Vice*)
Rose Whelan (*Pro Hac Vice)*
Cooley LLP
1299 Pennsylvania Ave, NW
Washington, DC 20004
(202) 842-7800
stephen.smith@cooley.com

Matthew J. Brigham
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5677
mbrigham@cooley.com

Stephen P. McBride (*Pro Hac Vice*)
Cooley LLP
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000
smcbride@cooley.com

*Attorneys for Defendant*
*Nintendo of America Inc.*

# EXHIBIT A

## PROPOSED SCHEDULE

| Event | Current Deadlines | Proposed Schedule |
|---|---|---|
| Rebuttal reports | May 23, 2017 | May 23, 2017 |
| Close of expert discovery | June 13, 2017 | June 13, 2017 |
| Deadline to file Dispositive Motions and Objections to experts/*Daubert* Motions | On hold | June 20 (7 days after close of expert discovery) |
| Oppositions to Dispositive and *Daubert* motions | On hold | July 11 (21 days after opening briefs) |
| Reply briefs re dispositive and *Daubert* motion | On hold | July 25 (14 days after opposition briefs) |
| Disclosures required by Rule 26(a)(3)(A)(i)-(iii), Fed. R. Civ. P. | July 13, 2017 | August 29 (4 weeks before Pretrial conference) |
| Objections to Disclosures required by Rule 26(a)(3)(A)(i)-(iii), Fed. R. Civ. P. | July 20, 2017 | September 5 (1 week after Disclosures required by Rule 26(a)(3)(A)(i)-(iii), Fed. R. Civ. P.) |
| Motions *in Limine* Deadline | July 27, 2017 | September 12 (1 week after Objections to Disclosures required by Rule 26(a)(3)(A)(i)-(iii), Fed. R. Civ. P.) |
| Submission of pre-trial materials | July 27, 2017 | September 12 (1 week after Objections to Disclosures required by Rule 26(a)(3)(A)(i)-(iii), Fed. R. Civ. P.) |
| Objections to Witness lists | August 4, 2017 | September 19 (7 days after Submission of pre-trial materials) |
| Pretrial Conference | Wednesday, August 9, 2017, at 9:00 a.m. | September 26 (2 weeks after Submission of pre-trial materials) |
| Jury Selection before Judge Barbara M. G. Lynn | 2-week docket beginning Monday, August 21, 2017, at 9:00 a.m. | October 10 (2 weeks after Pretrial Conference) |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served via CM/ECF upon all counsel of record on May 10, 2017.

*/s/ Stephen Smith*

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT
*In re: Nintendo of America Inc.,* 2017-XXXX

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Cooley LLP, attorneys for Petitioner to print this document.  I am an employee of Counsel Press.

On **July 10, 2017**I served the within **EMERGENCY MOTION FOR STAY UNDER RULE 8** upon:

> Michael C. Wilson
> mwilson@munckwilson.com
> S. Wallace Dunwoody
> wdunwoody@munckwilson.com
> Shain A. Khoshbin
> skhoshbin@munckwilson.com
> MUNCK WILSON MANDALA, LLP
> 12770 Coit Road, Suite 600
> Dallas, Texas 75251
> Telephone: (972) 628-3600
> Facsimile: (972) 628-3616

**via Express Mail and E-Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, the required copies have been filed via the Court's CM/ECF system on this date.

July 10, 2017

_____/s/ Robyn Coho_____
Robyn Cocho
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This motion complies with the type-volume limitation of Federal Circuit Rule 8(b)(1) and Federal Rule of Appellate Procedure 27(d)(2)(A).

    X    The motion contains 2,911 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The motion uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Circuit Rule 27(d).

2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6)

    X    The motion has been prepared in a proportionally spaced typeface using M.S. Word 2013 in a 14 point Times New Roman font or

_____ The motion has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

Dated: July 10, 2017          /s/ Stephen R. Smith_____
                              Stephen R. Smith
                              Cooley LLP
                              *Attorney for Petitioner*
                              *Nintendo of America Inc.*